James Lewis DUNN, et al., Plaintiffs,

v.

A/S EM. Z. SVITZER, et al., Defendants.

Civ. A. No. H–94–0725.

United States District Court,
S.D. Texas,
Houston Division.

March 29, 1995.

Michael John Maloney, Fisher Gallagher & Lewis, Houston, TX, for James Lewis Dunn, Helle Anderson, Ole Pedersen, Lasse Pedersen.

Ronald E. Tigner, Soules & Wallace, Houston, TX, for A/S EM Z. Svitzer.

Charles W. Hurd, III, Fulbright & Jaworski, Houston, TX, for Sogea, Dyckerhoff & Widmann AG, Campenon Bernard SGE.

Michael L. Rice, Jones Day Reavis & Pogue, Dallas, TX, for Monberg & Thorsen A/S, MT Group.

Edward J. Hennessy, Hennessy & Zito, Houston, TX, for Peter Kiewit Sons' Inc., Kiewit Const. Group Inc., Kiewit Const. Co., Kiewit Network Technologies Inc., Kiewit Mining Group Inc., Kiewit Tunneling Corp., Kiewit Diversified Group Inc., PKS Information Services Inc., Kiewit Holdings Group Inc.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Pending before this court are the following motions:

• a motion to dismiss for want of personal jurisdiction filed by defendants Peter Kiewit and Sons, Inc., Kiewit Construction Group, Inc., Kiewit Construction Company, MFS Network Technologies, Inc., Kiewit Diversified Group, Inc., Kiewit Mining Group, Inc., Grow Tunneling Corp., and PKS Information Services, Inc. ("the Kiewit Defendants") (Docket Entry No. 5);

• a motion and a renewed motion to dismiss for lack of personal jurisdiction and for *forum non conveniens* filed by defendants Dyckerhoff & Widmann AG ("D & W"), Campenon Bernard SGE ("Campenon") and SOGEA ("SOGEA") (collectively, "the Foreign Defendants") (Docket Entry Nos. 25 and 49);

• a motion to dismiss for lack of personal jurisdiction and for *forum non conveniens* by defendants Monberg and Thorsen A/S and the MT Group (Docket Entry No. 56);

• a motion to dismiss for lack of personal jurisdiction and for *forum non conveniens* by defendant Kiewit A/S (Docket Entry No. 74);

• a motion to dismiss for *forum non conveniens* by the Kiewit Defendants (Docket Entry No. 79);

• a motion to remand filed by plaintiff James Lewis Dunn (Docket Entry No. 9); and

• a motion to rule on the motion for remand before ruling on the defendants' motions to dismiss (Docket Entry No. 32).

For the reasons stated below, Dunn's motion to rule on the motion for remand before ruling on the motions to dismiss is DENIED. The motions to dismiss for want of personal jurisdiction by the defendants other than MFS Network Technologies are GRANTED. The motion to dismiss by MFS Network Technologies (one of the Kiewit Defendants) based on *forum non conveniens* is conditionally GRANTED as set out below.

## I. Background

Plaintiffs James Lewis Dunn ("Dunn") and Ole Pederson ("Pederson") allege that they were injured on July 10, 1992, while employed as divers on the construction of the Great Belt railway tunnel beneath the Baltic Sea in Denmark. Plaintiff Pederson is a Danish citizen and permanent resident. Plaintiff Dunn, although a United States citizen, is a permanent resident of Denmark. He has a Danish wife and children, and has stated in his pleadings that he intends to remain in Denmark. (Docket Entry No. 9, p. 11). Plaintiffs allege that they were given inadequate decompression after working in a pressurized zone.

Plaintiffs Dunn and Pederson filed suit in Harris County, Texas, on August 31, 1993, and the defendants removed on March 4, 1994. (Docket Entry No. 1). Defendants then filed motions to dismiss, and plaintiffs sought remand to state court.

## II. Plaintiffs' Motion to Rule on the Motion for Remand Prior to Ruling on the Motions to Dismiss

A district court has the power to rule on a motion challenging personal jurisdiction before reaching a motion to remand. *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1494 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1066 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992); *Walker v. Savell*, 335 F.2d 536, 539 (5th Cir.1964); *see also Nolan v. Boeing Co.*, 736 F.Supp. 120, 122 (E.D.La. 1990). A district court may also decide a motion to dismiss for *forum non conveniens* before a motion to remand. *Villar*, 990 F.2d at 1497–98.

Dunn's motion to rule on the remand motion first is therefore DENIED.

## III. Personal Jurisdiction

Two conditions must exist for personal jurisdiction to be asserted over nonresident defendants served out of state: (1) the nonresident must be amenable to service under the forum state's long-arm statute (an

issue governed by the law of the forum state); and (2) if the state jurisdictional test is satisfied, an assertion of jurisdiction over the nonresident defendant must be consistent with the Fourteenth Amendment due process clause. *Jones v. Petty–Ray Geophysical,* 954 F.2d at 1061.

■ The Texas long-arm statute has been interpreted to extend to the limits of due process. *Jones v. Petty–Ray Geophysical,* 954 F.2d at 1067. The issue is whether the assertion of jurisdiction is constitutionally permissible. *Id.* at 1067–68. In deciding whether jurisdiction is consistent with due process, a two-prong test must be satisfied: (1) the defendant must have sufficient "minimum contacts" with the forum state; and (2) the exercise of jurisdiction must comport with notions of fair play and substantial justice. *Id.* at 168. If the defendant's forum activities are "continuing and systematic," jurisdiction may be proper even if such activities are not related to the cause of action. *Id.* However, if the defendant's activities are isolated or disjointed, jurisdiction is proper only if the cause of action arises from the activity establishing the defendant's contacts. *Id.*

■ The burden of establishing personal jurisdiction over a defendant lies with the plaintiff. *Jones,* 954 F.2d at 1067. However, the plaintiff only need state a *prima facie* case; proof by a preponderance is not required. *Id.* "Any genuine, material conflicts between the facts as established by the respective parties' appropriate affidavits, and other proper summary judgment type evidence, must be resolved in Plaintiff's favor." *Id.*

## A. Personal Jurisdiction

### 1. Defendants D & W, Campenon, SO-GEA, Monberg & Thorsen, and the MT Group

The Foreign Defendants (D & W, Campenon, and SOGEA) move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. (Docket Entry No. 26). Defendants Monberg & Thorsen A/S ("MT A/S") and the MT Group have also filed a motion to dismiss for lack of personal jurisdiction or for *forum non conveniens.*

Plaintiffs Dunn and Pederson argue that general jurisdiction over the Foreign Defendants and MT A/S, and the MT Group, is proper because each "has an interrelated business relationship with five (5) of the other named defendants ... insofar as each are involved in a joint venture or partnership together known as MT Group, and, as such, each acts as an agent for the other to the extent of performing corporate duties." (Docket Entry No. 38, p. 7., n. 4).

The Foreign Defendants and MT A/S are members of the MT Group joint venture. The issues are whether one joint venture member has contacts with this forum, and, if so, whether those contacts can be attributed to the other members of the joint venture, and to the joint venture itself, for the purpose of asserting jurisdiction.

### a. The Joint Venture's Contacts with Texas

The MT Group is a joint venture organized under the laws of the Kingdom of Denmark, with its principal place of business in Denmark. The MT Group was formed to obtain a contract to construct the Eastern Railway Tunnel. The joint venture will be dissolved upon completion of the contract. The joint venture partners are MT A/S; D & W; SO-GEA; Campenon; and Kiewit A/S.

The MT Group is not registered or otherwise licensed to do business in Texas. It has no officers, directors, or employees living in Texas, and has never maintained an office, mailing address, or telephone listing in Texas. It has never owned or leased any property or real estate in Texas. The MT Group has never paid sales or use taxes in Texas, or contracted to supply services in Texas. The MT Group has never marketed its services in Texas, and does not advertise in Texas. No representative of MT Group has visited Texas for the purpose of soliciting or otherwise developing the business interests of MT Group. (Affidavit of Kaj Schoning, Chairman of MT Group, Docket Entry No. 58, Ex. B). The uncontroverted evidence is that MT Group, as an entity, does not have minimum contacts with Texas. (Affidavit of Kaj

Schoning, Chairman of MT Group, Docket Entry No. 58, Ex. B).

Because the contacts of the joint venture itself fall short of the constitutionally required minimum for jurisdiction, the question is whether one or more members of the joint venture has minimum contacts with the forum, either directly or by attribution. *Donatelli v. National Hockey League,* 893 F.2d 459, 469 (1st Cir.1990). If one or more joint venture members has such contacts, the court must then examine whether "the association exercised substantial influence over the member's decision to carry on the in-forum activities which constitute the relevant minimum contacts." *Id.* at 469. The member's activities in the forum must be related to the joint venture's business *and* the other members or the association itself must have exercised substantial influence over the member's decision to carry on those activities.

If the association does exercise such influence, the court must determine whether it is fair and reasonable to assert jurisdiction over the association and its other members under the circumstances. *Id.*

### b. The Joint Venture Members' Contacts with Texas

#### (1) D & W

Defendant D & W is a German corporation with its principal place of business in Munich, Germany. D & W constructs buildings, bridges, and tunnels. D & W is not incorporated in Texas. It has never paid taxes in Texas or been licensed to do business in Texas. D & W has never had a bank account, address, post office box, or telephone listing in Texas, and has not sold products, materials, or other things that have been processed, serviced or manufactured in Texas. D & W does not and has not owned or leased any real or personal property in Texas. None of the company's officers or directors are domiciled in Texas. D & W has no employees in Texas and has never recruited any employees who resided in Texas. (Affidavit of Rainer Horlascher, Director of D & W, Docket Entry No. 50, Ex. B). D & W does not have minimum contacts with Texas sufficient to support personal jurisdiction.

#### (2) SOGEA

SOGEA is a limited liability company formed under the laws of France. Its principal place of business is Rueil Malmaison, France. SOGEA is in the engineering and construction business. SOGEA is not incorporated in Texas; is not licensed to do business in Texas; and has never paid taxes in Texas. It has never had a bank account, address, post office box, or telephone listing in Texas. None of SOGEA's officers or directors reside in Texas. SOGEA has never held a meeting of its board of directors or shareholders in Texas. It has no employees residing in Texas. Its officers and directors do not attend business conferences in Texas on behalf of SOGEA. (Affidavit of Fred Einbinder, head of the international legal affairs department of Campenon upon consultation with people at SOGEA, Docket Entry No. 50, Ex. C). SOGEA does not have minimum contacts with Texas sufficient to support personal jurisdiction.

#### (3) Campenon

Campenon is an unlimited liability company formed under the laws of France. Its principal place of business is in Rueil Malmaison, France. Campenon is in the engineering and construction business. Campenon is not incorporated or licensed to do business in Texas. It has never paid taxes in Texas, and has never had a bank account, address, post office box, or telephone listing in Texas. None of Campenon's officers and directors reside or are domiciled in Texas. It has never held a meeting of its corporate board or shareholders in Texas. Its officers and directors do not attend business conferences in Texas on behalf of Campenon. (Affidavit of Fred Einbinder, head of the international legal affairs department of Campenon, Docket Entry No. 59, Ex. D). Campenon does not have minimum contacts with Texas sufficient to support personal jurisdiction.

#### (4) MT A/S

Monberg & Thorsen A/S ("MT A/S") is a limited liability company organized under the laws of the Kingdom of Denmark, with its

principal place of business in Copenhagen, Denmark. MT A/S is a construction contractor. MT A/S is not authorized to do business in Texas and does not have offices in Texas. The company has no officers, directors, or employees living in Texas. None of the corporate officers of MT A/S have made business trips to Texas in the past five years. MT A/S has never maintained any office, mailing address, intrastate telephone listing, or other business facility in Texas. It has never been licensed to do business in Texas; never owned, or leased property or real estate in Texas; never paid or owed any Texas sales or use tax; and never contracted to supply services in Texas. MT A/S does not market its services in the state of Texas. (Affidavit of Kaj Schoning, President of MT A/S, Docket Entry No. 58, Ex. A). MT A/S does not have minimum contacts with Texas sufficient to support personal jurisdiction.

### (5) Kiewit A/S

Kiewit A/S is a corporation organized under the laws of Denmark in 1987. Its principal place of business is in Denmark. Kiewit A/S is a wholly owned subsidiary of Kiewit Construction Group, Inc., which in turn, is a wholly owned subsidiary of Peter Kiewit and Sons, Inc.

Kiewit A/S has never qualified to do business in Texas and has no registered agent in Texas. None of the officers or directors of Kiewit A/S have resided in Texas. Kiewit A/S has never maintained a branch office in Texas, and has no telephone listing, bank account, personal or real property, or mailing address in Texas. No meetings of the board of directors of Kiewit A/S have been held in Texas. (Declaration of John C. Schraufnagel, authorized claims agent of Kiewit A/S, Docket Entry No. 73, Ex. 1). Kiewit A/S itself does not have minimum contacts with Texas sufficient to support personal jurisdiction, unless the other Kiewit Defendants' contacts with Texas can be attributed to Kiewit A/S.

■ There is no summary judgment evidence that the Kiewit Defendants' contacts with Texas were related to the MT Group joint venture, much less that such contacts were made at the MT Group's direction or influence. *See Donatelli*, 893 F.2d at 469.

Assuming, without deciding, that the other Kiewit entities have contacts with Texas that can be attributed to Kiewit A/S, the lack of connection between those contacts and the MT Group joint venture preclude this court from attributing those contacts to the Foreign Defendants; to MT A/S; or to the MT Group itself.

Plaintiffs ask the court to hold that one joint venture member's contacts with a forum, unrelated to the joint venture, can be attributed to the other joint venture members for the purpose of asserting jurisdiction over those members. Plaintiffs cite no authority for such an assertion of jurisdiction, and this court finds it to be an inappropriate extension of the applicable law. Such an extension would also violate the due process test.

■ The determination of "reasonableness and fair play" in the exercise of jurisdiction depends upon an evaluation of the interests of the forum state, the plaintiff's interest in obtaining relief, the burden on the defendants, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 119, 107 S.Ct. 1026, 1035, 94 L.Ed.2d 92 (1987).

■ Texas has little or no interest in a suit by residents of Denmark, arising out of an accident in Denmark, challenging workplace safety standards and practices in Denmark. It is not clear that Texas law, rather than Danish law, would apply. *See Asahi*, 480 U.S. at 115, 107 S.Ct. at 1033–34 (California's legitimate interests were "considerably diminished" in an indemnity suit between foreign manufacturers where it was not clear that California law would even apply). The sources of documentary evidence are in Denmark, as are the fact witnesses. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114, 107 S.Ct. at 1033.

In cases involving activities that take place abroad, a court must consider the procedural and substantive policies of other nations whose interests are affected. *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1033–34. Those interests, as well as the federal interest in government's foreign relations policies, require a careful inquiry into the burdens on an alien defendant and the interests on the part of the plaintiff or the forum state. *Id.* "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.*

Texas has little interest in this case. Denmark has a great interest in this case, which involves injuries to Danish residents, in Denmark. Denmark has a comprehensive system of workers' compensation and tort laws which recognize a cause of action for negligence. The exercise of personal jurisdiction by a Texas court over the Foreign Defendants, over MT A/S, and over the MT Group, would be unreasonable and unfair. *Asahi,* 480 U.S. at 116, 107 S.Ct. at 1034.

The motions to dismiss for lack of personal jurisdiction by D & W, Campenon, SOGEA, MT A/S,; and the MT Group are GRANTED.

### 2. The Kiewit Defendants

The Kiewit Defendants have moved for dismissal based on lack of personal jurisdiction or *forum non conveniens.* (Docket Entry Nos. 5 and 79). Kiewit A/S has also moved to dismiss. (Docket Entry No. 74).

#### a. Kiewit Defendants without direct contacts to Texas

There is no evidence that the following Kiewit entities themselves have contacts with Texas: Peter Kiewit and Sons, Inc. (the parent holding company); Kiewit Construction Group, Inc.; Kiewit Diversified Group, Inc.; Kiewit Tunnelling Corporation; PKS Information Systems; and Kiewit A/S. The issue is whether jurisdiction can be asserted over them because of contacts with Texas by other Kiewit entities, including Kiewit Mining Group, Kiewit Construction Company, and MFS Network Technologies.

A parent corporation such as Kiewit Construction Co., Inc. or Peter Kiewit and Sons, Inc., is not subject to the jurisdiction of a forum state "merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983). However, where the parent corporation exerts such domination and control over its subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation," the close relationship between a parent and its subsidiary may justify attributing the subsidiary's contacts to the parent. *Id.* As long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum may not be attributed to the other. *Hargrave,* 710 F.2d at 1160; *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). In *Cannon,* the Supreme Court affirmed a district court's dismissal for lack of personal jurisdiction over a parent where the parent owned the entire capital stock of the subsidiary, and both companies shared some officers but where "all transactions between the two corporations [were] represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations." *Id.*

*Cannon* holds that even complete stock ownership and common officers and directors are not sufficient to attribute contacts of one entity to another. *Hargrave v. Fibreboard Corp.,* 710 F.2d at 1160; *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); *Turner v. Jack Tar Grand Bahama, Ltd.,* 353 F.2d 954, 956 (5th Cir.1965). The cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary. *Hargrave,* 710 F.2d at 1160; *Walker,* 583 F.2d at 167, *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 493 (5th Cir.1974), *overruled on other grounds, Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Murdock v. Volvo of America Corp.,* 403 F.Supp. 55 (N.D.Tex.

1975); *Reul v. Sahara Hotel*, 372 F.Supp. 995 (S.D.Tex.1974); *Frito–Lay, Inc. v. Procter & Gamble Co.*, 364 F.Supp. 243 (N.D.Tex. 1973); *Bland v. Kentucky Fried Chicken Corp.*, 338 F.Supp. 871 (S.D.Tex.1971). The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. The degree of control exercised by the parent must be "more than that appropriate for a sole shareholder of a corporation." *Hargrave*, 710 F.2d at 1161. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist. *Id.* at 1160.

The parent may have complete authority over general policy decisions at the subsidiary, including such matters as selection of product lines, hiring and firing of officers, and approval of sizable capital investments, without being considered to exercise domination of the company. *Hargrave*, 710 F.2d at 1160. However, day-to-day business and operational decisions may not be made by the parent. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir.1988). *Hargrave*, 710 F.2d at 1160; *Entek Corp. v. Southwest Pipe & Supply Co.*, 683 F.Supp. 1092, 1105 (N.D.Tex.1988).

Other important factors are: (1) whether the subsidiary is adequately capitalized; (2) whether there are formal barriers between management of the two entities, with each functioning in its own best interests: in other words, whether the companies have separate boards of directors, even if the boards have members in common and whether the officers of the parent manage the subsidiary; (3) whether the parent and subsidiary keep separate books and bank accounts; (4) whether the subsidiaries file an income tax return separate from the consolidated return filed by the parent; (5) whether those with whom the corporations come in contact are apprised of their separate identity; (6) the method and degree of financing of the subsidiary by the parents; and (7) the extent to which contracts between the parent and the subsidiary favor one over the other. *Hargrave*, 710

F.2d at 1162. *Southmark Corp.*, 851 F.2d at 773.

### (i) Kiewit A/S

Kiewit A/S, a company organized under the laws of Denmark, is a wholly-owned subsidiary of Kiewit Construction Co., Inc., which, in turn, is a wholly owned subsidiary of Peter Kiewit and Sons, Inc. Plaintiffs argue that the facts that the Kiewit Defendants have some common directors and common shareholders justify piercing the corporate veil.

Kiewit A/S shares one overlapping officer/director with Kiewit Construction Group, Inc. (Docket Entry No. 74, Ex. 1, ¶ 14). This is not enough, absent other indicia of inordinate control by the parent over the subsidiary. *Hargrave*, 710 F.2d at 1160; *Cannon*, 267 U.S. at 335, 45 S.Ct. at 251 (1925).

There is no evidence that Kiewit A/S is undercapitalized, or that it has engaged in commercially unreasonable contracts that inordinately favor its parent. The uncontroverted summary judgment evidence is that Kiewit A/S is insured by comprehensive liability insurance with limits in excess of $100 million dollars. (Docket Entry No. 74, Ex. 1, ¶ 14). Kiewit Construction Company was involved in the preliminary negotiations for the formation of the MT Group, and initially issued contractual guarantees covering the performance of Kiewit A/S. Kiewit Construction Group, Inc. was replaced as the guarantor in 1989. There is no summary judgment evidence that these performance guarantees inordinately favor one party over the other.

The uncontroverted summary judgment evidence is that officers of Kiewit A/S control its day-to-day operations. (Docket Entry No. 4, Ex. 1, ¶ 15). Plaintiffs argue that the fact that Peter Kiewit and Sons, Inc. admitted in an answer to an interrogatory that it provides accounting, payroll, claims and risk management, reporting and data management services under contracts with its subsidiaries "reveals [the parent's] control over the daily operations of the remaining Kiewit Defendants, including Kiewit A/S." (Docket Entry No. 81, p. 5). This court has been

able to find no authority that states that the mere provision of administrative and data management services under contracts, by itself, shows exercise and control. Plaintiffs have provided no evidence that provision of these support services entails making day-to-day operational decisions for Kiewit A/S.

Under the applicable authorities, Kiewit A/S's corporate form cannot be disregarded for the purpose of asserting personal jurisdiction. Texas contacts that its parent corporation may have, directly or by imputation, cannot be attributed to Kiewit A/S.

### (ii) Peter Kiewit and Sons, Inc. and Kiewit Construction Group, Inc.

There is no summary judgment evidence of control by Peter Kiewit and Sons, Inc. or Kiewit Construction Group, Inc. over subsidiaries which do have some contacts to Texas to justify attributing those subsidiaries' Texas contacts to the parent or to other subsidiaries. As with Kiewit A/S, the only evidence is that the companies share some common board members and officers, and that Peter Kiewit and Sons, Inc. provides some accounting, payroll, claims and risk management, reporting and data management services under contracts with its subsidiaries. For the reasons discussed above, this is an insufficient basis for jurisdiction.

### (iii) Kiewit Diversified Group, Inc.; Kiewit Tunnelling Corporation; and PKS Information Systems.

Plaintiffs ask the court to attribute the Texas contacts of other Kiewit subsidiaries to the Kiewit entities listed above. There is no evidence that the parent company exerts a level of control over the subsidiaries that would justify attributing the subsidiaries' contacts to the parent, the parent's contacts to the subsidiaries, or one subsidiary's contacts to another. This court does not have personal jurisdiction over PKS Information systems, Kiewit Diversified Group, or Kiewit Tunnelling Corporation.

### b. Kiewit Defendants with direct contacts to Texas

Three of the Kiewit Defendants do have some contacts with Texas. They are MFS Network Technologies, Inc. (formerly Kiewit Network Technologies, Inc.); Kiewit Construction Company; and, possibly, Kiewit Mining Group, Inc.

### (i) Kiewit Mining Group

■ Kiewit Mining Group is a subsidiary of Peter Kiewit and Sons, Inc. Kiewit Mining Group is not qualified to do business in Texas and has no registered agent in Texas. It has had no employees permanently residing or domiciled in Texas; no branch office, telephone listing, mailing address, or bank accounts in Texas. The only evidence in the record of Kiewit Mining Group's contacts with Texas is its statement in the Kiewit Defendants' motion to dismiss that Kiewit Mining Group, Inc. "may do some temporary work in Texas in March of 1994." (Docket Entry No. 6, p. 7).

There is no evidence that Kiewit Mining Group actually performed temporary work in Texas in March of 1994, or what that work was. The evidence before this court does not support the assertion of personal jurisdiction over Kiewit Mining Group in a cause of action unrelated to its contacts, if any, with Texas.

### (ii) Kiewit Construction Company

Kiewit Construction Company is a subsidiary of Kiewit Construction Group, Inc., which is also the parent of Kiewit A/S. Kiewit Construction Group, Inc. is itself a subsidiary of Peter Kiewit and Sons, Inc. Kiewit Construction Company is qualified to do business in Texas and maintains a registered agent in Texas. (Docket Entry No. 12, Ex. 3, ¶ 3). In July 1986, the United States Department of Energy awarded Kiewit Construction Co. a $17.5 million pipeline construction contract, to be performed in Texas. In addition to that contract, Kiewit Construction Company has sold construction equipment to persons located in Texas. (Docket Entry No. 73, p. 12).

■ Dunn's and Pederson's causes of action are unrelated to Kiewit Construction Group's contacts to Texas. One contract, entered into nearly a decade ago, is not sufficient to support an exercise of jurisdiction unrelated to that contract. There is no evidence as to how much construction equipment Kiewit Construction Company sold, whether such equipment was sold on a regu-

lar basis, or when the last sale occurred. Kiewit Construction Company's contacts with Texas are not "continuous and systematic" so as to support general jurisdiction.

### (iii) MFS Network Technologies

■ MFS Network Technologies is a subsidiary of MFS Communications Co., Inc., which in turn is a subsidiary of Kiewit Diversified Group, Inc. Kiewit Diversified Group is a wholly-owned subsidiary of Peter Kiewit and Sons, Inc. MFS Network Technologies was engaged as a general contractor to construct fiber optic networks in Houston and Dallas, which were completed in 1991. The company was also engaged as a general contractor on a separate construction project that began in June or July of 1993, and was scheduled for completion in 1994. (Docket Entry No. 6, Ex. 4, ¶ 6). The company is involved in a research and development project with another company in Dallas. Although the MFS Network Technologies employees on that project are based in Omaha, Nebraska, they travel to Texas from time to time in connection with that project.

MFS Network Technologies employed one salesman in Texas. His employment was terminated in 1993. MFS Network Technologies has defended a suit in the Southern District of Texas, *European Broadband Systems PLC v. David McCourt, et al.*, Docket No. 93–CV–0097. MFS Network Technologies has 12 employees in Texas whose job duties involve monitoring the fiber-optic networks owned and operated by affiliated companies. MFS Network Technologies has leased or purchased real property in Texas. (Docket Entry No. 73, p. 19). This court finds that these contacts qualify as continuous and systematic.

Subjecting MFS Network Technologies to jurisdiction in Texas in this case would not violate the fairness prong of the due process test. MFS Network Technologies has already defended a suit in Texas. Despite the fact that Texas has no interest in this controversy, this court finds that the assertion of personal jurisdiction over MFS Network Technologies would not violate the fairness prong of the due process test. *See Burstein v. State Bar of California*, 693 F.2d 511, 520

(5th Cir.1982); *Asahi*, 480 U.S. at 119, 107 S.Ct. at 1035.

### IV. Forum Non Conveniens

■ MFS, with other defendants, has moved for a *forum non conveniens* dismissal (Docket Entry No. 79). Dismissal for *forum non conveniens* is a matter within the discretionary power of the district court, subject to review for an abuse of discretion. *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). The party seeking dismissal has the burden of proof. *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir.1987) (*en banc*), *vacated on other grounds sub. nom., Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *opinion reinstated in part*, 883 F.2d 17 (5th Cir.1989) (*en banc*).

■ The *forum non conveniens* inquiry is a three-step process. First the court must examine whether the alternative forum is adequate and available. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981). A forum is available when the entire case and all parties can come within the jurisdiction of that forum. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir.1986). A foreign forum is adequate if the parties are not deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits they might receive in a United States court. *Piper*, 454 U.S. at 247–55, 102 S.Ct. at 261–65; *Empresa Lineas Maritimas Argentinas v. Schichau–Unterweser*, 955 F.2d 368, 372 (5th Cir.1992).

■ If the forum is adequate and available, the court must then balance the private interest factors. *Id.; In re Air Crash Disaster*, 821 F.2d at 1162. The private interest factors to be examined are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for obtaining attendance of witnesses; (3) the costs of obtaining attendance of willing witnesses; (4) the probability of the need to view the premises, if appropriate; (5) other practical problems that make trial easy, expeditions and inexpensive; and (6) enforceability of judg-

ment if one is obtained. *Id.* at 1162. *Baris,* 932 F.2d at 1550, n. 15. If the private factors weigh in favor of dismissal, no further inquiry need be made. *Baris,* 932 F.2d at 1550; *In re Air Crash Disaster,* 821 F.2d at 1165.

■ If the court cannot determine whether the private interest factors weigh in favor of dismissal, it is required to examine the public interest factors which include: (1) the administrative difficulties flowing from further court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in trying the case in a forum familiar with the law governing the action; (4) the avoidance of unnecessary problems regarding conflicts of law or the application of foreign law; and (5) the burden of jury duty on citizens of the forum. *Baris,* 932 F.2d at 1550–51; *In re Air Crash Disaster,* 821 F.2d at 1162–63.

■ In this case, the Southern District of Texas is not an adequate forum because none of the defendants with direct involvement with the accident are subject to personal jurisdiction here. Denmark, by contrast, is an adequate and available forum. Denmark has a fault-based tort liability system, as well as a comprehensive workers' compensation system. (Affidavit of Michael Budtz, partner of Kroman & Munter, Denmark's largest law firm, Docket Entry No. 76, Tab 3). Other courts in the United States have recognized that the courts of Denmark are an adequate alternative forum for resolution of negligence claims. *See, e.g., Rudisill v. Sheraton Copenhagen Corp.,* 817 F.Supp. 443, 446 (D.Del. 1993); *Fraizer v. St. Jude Medical, Inc.,* 609 F.Supp. 1129, 1130 (D.Minn.1985).

The private interest factors overwhelmingly point towards dismissal. All the relevant sources of proof are located in Denmark. The accident site is in Denmark, as are the plaintiffs, the documents and physical evidence, the liability fact witnesses, and the medical personnel who treated the plaintiffs. This court could not compel the attendance of Danish witnesses to testify. This court does not have jurisdiction over any member of the MT Group. Therefore, it could not compel attendance of the witnesses with first-hand knowledge because they reside in Denmark and their employer is not subject to personal jurisdiction. Because the relevant witnesses are located in Denmark, the cost of bringing even willing witnesses to testify before this court would be exorbitant. The site may have to be visited. It will be easier to do so if the action is brought in Denmark.

The public interest factors also weigh heavily in favor of Denmark. Texas has no interest in this suit by Danish residents, which involves one of that nation's largest public works projects, and which implicates Danish public policies of workplace safety. No Texas or United States residents are involved. Given the lack of interest by Texas in this dispute, no public interest would be served by burdening a Texas jury with a trial concerning events that occurred half a world away.

This court finds that Denmark is an adequate and available forum. This court finds that the public and private interest factors point overwhelmingly to dismissal based on *forum non conveniens.*

■ While the district court is given the discretion to determine the conditions of dismissal or to determine that the dismissal should be unconditional under the circumstances, the district court must ensure that a plaintiff can reinstate suit in an American court if the defendants obstruct jurisdiction in the alternative forum. *Baris,* 932 F.2d at 1551; *In re Air Crash Disaster,* 821 F.2d at 1163. Courts take measures, as part of their dismissals in *forum non conveniens* cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts. *Baris,* 932 F.2d at 1551. Such measures often include agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations to defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment. *Baris,* 932 F.2d at 1551.

MFS Network Technologies has indicated that it is "willing to agree to any reasonable conditions this Court may consider necessary to impose as part of a dismissal for *forum non conveniens,* including submission to the

**992**

jurisdiction of the courts of Denmark, waiving in the Danish courts any statute of limitations defense that has matured after this suit was filed in Texas, and agreeing to obey any final judgment issued by the Danish Courts, after exhausting all appeals or other legal remedies." (Docket Entry No. 79, p. 3).

This court finds that MFS Network Technologies' motion for *forum non conveniens* dismissal should be GRANTED, conditioned upon MFS Network Technologies' agreed stipulation to submit to the jurisdiction of the courts of Denmark; waive any statute of limitations that has matured after this suit was filed in Texas; and to obey any final judgment issued by the Danish Courts, after exhausting all appeals or other legal remedies. This court will not require MFS Network Technologies to stipulate to any special discovery because the uncontroverted evidence is that MFS Network Technologies had no direct connection with the Great Belt tunnel project on which the plaintiffs were injured. The only connection MFS Network Technologies has to the dispute is that it is a subsidiary of the holding company that, through other subsidiaries, owns Kiewit A/S. Plaintiffs have already had extensive discovery on the issues relevant to piercing the corporate veil. No further discovery is required.

## V. Order

The motion to dismiss for *forum non conveniens* by MFS Network Technologies is GRANTED subject to the conditions stated in this opinion. MFS Network Technologies is ORDERED to file with this court within 20 days of this order either the required stipulation or a notice that it can not agree to the conditions set forth in the opinion. The motions to dismiss by all of the other defendants for want of personal jurisdiction are GRANTED.