## AMERICAS INSURANCE COMPANY

v.

**ENGICON, INC., Chevron Corporation, Individually and d/b/a Chevron Nigeria Ltd., and Chevron Nigeria Ltd.**

Civ. A. No. G–95–179.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 7, 1995.

W. Mark Lanier, Houston, TX, for Americas Ins. Co.

Hugh L. McKenney, McKenney & Jesse, Houston, TX, for Engigon, Inc.

Walter J. Cicack, Meyer Orlando & Evans, Houston, TX, for Chevron Nigeria Ltd.

## *ORDER*

KENT, District Judge.

Pending before the Court is Defendant Chevron Corporation's (hereinafter "Chevron") Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(2). Also before the Court is Defendant Chevron Nigeria Ltd.'s (hereinafter "CNL") Motion to Transfer Venue to the United States District Court for the Southern District of Texas, Houston Division. For the reasons set forth below, Defendant Chevron Corporation's Motion to Dismiss and Defendant Chevron Nigeria Ltd.'s Motion to Transfer Venue are GRANTED.

### I. Background

Plaintiff brings this action for a declaration of rights relative to defense and indemnification obligations allegedly arising from a policy of insurance (No. 27981) issued by Plaintiff in favor of Defendant Engicon. The policy at issue is a comprehensive general liability policy that provides $1,000,000.00 coverage per occurrence with a deductible of $5,000 per occurrence on land and $10,000.00 per occurrence not on land.

The dispute arises from the settlement of a lawsuit for personal injuries filed in this Court on November 18, 1993, by Willie W. Tanner, Jr., Jo Ann Tanner, and Stevenson Holmes against Defendant Chevron and Defendant Engicon. These Plaintiffs' claims were ultimately settled for an amount in excess of the jurisdictional limits of this Court.

At the time of these Plaintiffs' injuries in the above-mentioned case, the Plaintiff in the current case, Americas Insurance Company, provided coverage for certain conduct of Defendant Engicon. Defendant Engicon entered into a contract with Defendant Chevron in which Defendant Engicon allegedly agreed to indemnify Defendant Chevron for certain losses.

According to Plaintiff, letters dated May 4, 1994, May 18, 1994, and May 23, 1994, served to tender a defense by Plaintiff to Defendant Chevron pursuant to the aforementioned contract. Plaintiff, however, contends that it expressly reserved various rights to limit its indemnity obligations and possibly its defense obligations. Plaintiff also allegedly informed Defendant Engicon of Exclusion Q of the Comprehensive General Liability Policy. Exclusion Q excludes "any liability arising due to the rendering of or failure to render any professional services."

A further provision with respect to contractual liability coverage contained in the Broad Form Comprehensive General Liability Endorsement under sub-section (B) provides that:

(B) The insurance afforded with respect to liability assumed under an incidental contract is subject to the following additional exclusions:

(2) If the insured is an architect, engineer, or surveyor to bodily injury ... arising out of the rendering of or the failure to render professional services by such insured, including

(a) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications, and

(b) Supervisory, inspection, or engineering services.

According to Plaintiff, the evidence in the underlying personal injury case demonstrated that liability arose from a design of stairs by Defendant Chevron. Therefore, Plaintiff argues that it had no contractual obligation to provide a defense or to indemnify either Defendant Engicon or Defendant Chevron.

Plaintiff now seeks a declaration that its insurance coverage relative to Defendant Engicon does not provide for defense and indemnity obligations based on the claims and lawsuits of the Tanners and Mr. Holmes due to an applicable exclusion contained within the policy of insurance.

On May 31, 1995, Defendant CNL filed a Motion to Transfer Venue to the Houston Division of the United States District Court for the Southern District of Texas. In support thereof, Defendant argues: (1) the underlying personal injury suit by the Tanners and Mr. Holmes was settled by mediation in Houston; (2) Defendant CNL is not subject to the general in personam jurisdiction of Courts in the State of Texas; (3) most if not all of the supporting documents required by all parties are in Houston; (4) most of the witnesses required by all parties are located in Houston; (5) all attorneys are located in Houston; and (6) the interest of justice would be served by transferring this action to Houston.

In response thereto, Plaintiff asserts the following: (1) since this litigation arises from the defense and settlement of the underlying suit in the Galveston Division of the Southern District of Texas, the Galveston Division is the place where the wrong occurred; (2) Plaintiff has chosen the Galveston Division in which to pursue a remedy; (3) given that Defendant CNL has failed to identify and outline the testimony of key witnesses, Defendant CNL has failed to show that the location of witnesses compels the transfer of this case to Houston; (4) Defendant CNL has failed to describe either the volume or the general subject matter of the relevant documents to meaningfully show trying this case in Galveston would be burdensome; (5) the location of counsel is of minimal importance in the resolution of a Motion to Transfer; and (6) a transfer of this case may result in delay.

On May 31, 1995, Defendant Chevron filed a Motion to Dismiss Plaintiff's First Amended Complaint for Declaratory Judgment for lack of in personam jurisdiction.

## II. Defendant Chevron's Motion to Dismiss

Defendant Chevron moves for the dismissal of this case on the grounds that this Court lacks personal jurisdiction.

The Due Process Clause of the United States Constitution limits the exercise of personal jurisdiction over non-resident defendants to jurisdictions with which the defendant has purposefully established "certain minimum contacts such that the maintenance of a [law suit] does not offend traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir.), *cert. denied,* ── U.S. ──, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

In Federal Court, personal jurisdiction over a non-resident defendant is proper if: (1) the long-arm statute of the state in which the District Court sits authorizes such jurisdiction, and (2) exercising personal jurisdiction over the defendant would be consistent with due process. *Villar v. Crowley Maritime Corp.,* 780 F.Supp. 1467, 1476–77 (S.D.Tex.1992), *aff'd,* 990 F.2d 1489 (5th Cir. 1993), cert. denied, ── U.S. ──, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). The Texas long-arm statute, Tex.Civ.Prac. & Rem.Code Ann. § 17.042, reaches as far as Federal Constitutional requirements will allow. *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991); *e.g., Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Thus, whether a defendant is subject to personal jurisdiction in Texas presents the sole remaining question of whether requiring a defendant to litigate in Texas would violate due process. *Wilson,* 20 F.3d at 648; *Villar,* 780 F.Supp. at 1474–75.

*A. The Due Process Inquiry of Personal Jurisdiction*

The due process inquiry encompasses two factors. First, the defendant must have "minimum contacts" with Texas. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. Second, requiring the defendant to litigate in Texas must not offend "traditional notions of fair play and substantial justice." *Id.; See, Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir.1993).

In considering Defendant's Motion to Dismiss for lack of personal jurisdiction, the Court must resolve any factual disputes in Plaintiff's favor and take uncontroverted allegations in Plaintiff's Complaint as true. *Wilson,* 20 F.3d at 648; *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990). However, to invoke this Court's jurisdiction, Plaintiff must present facts that establish at least a prima facie case that personal jurisdiction over the Defendant is proper. *Wilson,* 20 F.3d at 648; *Bullion,* 895 F.2d at 217.

1. Minimum Contacts

The "minimum contacts" aspect of due process has been divided into two types of personal jurisdiction—specific and general. *Wilson,* 20 F.3d at 647. The Court will examine each of these in turn.

With regard to specific personal jurisdiction, the Court may assert jurisdiction over a non-resident defendant if the defendant has "purposefully directed his activities at the residents of the forum," and the litigation resulted from "alleged injuries that 'arise from or relate to' the defendant's activities directed at the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)); *Aviles v. Kunkle,* 978 F.2d 201, 204 (5th Cir.1992).

In order for a Court to obtain specific personal jurisdiction over a non-resident defendant, the defendant must have "purposefully directed" activities at the forum state. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. Defendant was not registered to do business in Texas and has no employees in Texas. It sells no products or services in Texas. As such, Plaintiff can make no prima facie showing that Defendant "purposefully directed" any of its activities at the forum state, Texas.

Additionally, for specific personal jurisdiction to exist, the Plaintiff's alleged injuries must also "arise from or relate to" the activities of the Defendant that were directed at the forum state. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

In the present case, Defendant Chevron has no contact with Texas that relates to Plaintiff's cause of action. This litigation does not arise out of the conduct of Defendant Chevron in Texas. Defendant Chevron has no connection with the underlying suit for personal injuries. Plaintiff did not pay any money for Defendant Chevron's defense costs. Nor did Plaintiff pay any money in settlement of any claims against Defendant

Chevron because Defendant Chevron was not a party to the underlying suit.

Thus, this Court finds that Plaintiff's injuries did not arise from or relate to any acts of the Defendant which were purposefully directed at the State of Texas, and therefore, specific personal jurisdiction over Defendant does not exist.

■ Turning to the issue of general personal jurisdiction, the Court notes that in order to exercise general personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must be both "continuous and systematic," and "substantial." *Wilson,*[1] 20 F.3d at 647, 650–51; *Helicopteros,* 466 U.S. at 417–19, 104 S.Ct. at 1873–75, (declining to uphold general personal jurisdiction over a foreign defendant that negotiated a contract in Texas, purchased equipment in Texas, and had its employees trained in Texas.).

In *Bearry v. Beech Aircraft Corp.* 818 F.2d 370, 376 (5th Cir.1987), the Court held that general jurisdiction did not exist in Texas over a Delaware company with its principal place of business in Kansas where: (1) the Defendant was never qualified to do business in Texas; (2) the Defendant had no employees in the state of Texas; (3) the Defendant sold its goods to Texas purchasers via contracts entered into and executed in Kansas; and (4) the Defendant accepted all deliveries from Texas vendors in Kansas. The Court concluded that the Defendant's contacts with the forum "did not create a general presence in that state. Each transaction was completed outside of Texas. The laws of Texas neither protected nor benefitted [Defendant.]" *Id.*

Chevron likewise conducts its business in California, entirely out side of the State of Texas. Chevron is not qualified to do business in Texas. Chevron is a Delaware corporation with its principal place of business in California. It does not maintain an office in

Texas. Defendant does not have a registered agent for service of process in Texas. It does not own any real property in Texas. Furthermore, it does not have, conduct, or transact any business in Texas.

Defendant Chevron's contacts are significantly more attenuated than those contacts found to be insufficient for general personal jurisdiction purposes in *Wilson* and *Helicopteros.* Hence, this Court finds Defendant's contacts with Texas were not sufficiently "continuous and systematic," and "substantial" to merit this Court's exercise of general personal jurisdiction over Defendant.

**2. Fair Play and Substantial Justice**

■ In addition to requiring "minimum contacts" with the forum state, due process requires that the exercise of personal jurisdiction over a non-resident defendant comply with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *Wilson,* 20 F.3d at 647. The relationship between the defendant and the forum state must be such that it is "reasonable ... to require the corporation to defend the particular suit which is brought there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

The burden on the Defendant, while always a primary concern, will be considered in light of other relevant factors: (1) the forum state's interest in adjudicating the dispute; (2) the Plaintiff's interest in obtaining convenient and effective relief; (3) the inter-state judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

The Court notes, however, that "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another state; even if

---

**1.** In *Wilson,* the Fifth Circuit held that there was not general personal jurisdiction over a non-resident defendant-lawyer in Texas even though the defendant: (1) carried malpractice insurance through a Texas law firm; (2) performed approximately one legal project per year for Texas firms in the three years prior to the Plaintiff's law suit;

(3) gave a legal seminar in Texas; (4) served as a *pro bono* consultant to a Dallas historical society for several years; (5) visited Dallas in 1988 and 1989; (6) wrote a letter that appeared in a Texas newspaper; (7) wrote a book that was circulated in Texas; and (8) gave interviews to Texas reporters over the years.

the forum state has a strong interest in applying its law to the controversy; even if the forum state is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the state of its power to render a valid judgment." *Id.*

In applying these factors to the present case at bar, the Court finds a complete lack of those affiliating circumstances that are necessary for this Court to exercise personal jurisdiction. The Defendant engages in no activity whatsoever in Texas. Defendant sells no product in Texas, nor does Defendant perform any services in Texas. Defendant has not availed itself of any of the privileges and benefits of Texas law. Defendant does not solicit any business in Texas, either through sales representatives or through advertising reasonably calculated to reach the state.

Furthermore, in *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987), the United States Supreme Court noted that fair play and substantial justice mandate the consideration of several factors: (1) the degree to which the defendant has purposefully interjected itself in the forum state; (2) the burden of requiring the non-resident defendant to appear in the forum state; (3) the forum state's interest in the litigation; and (4) the Plaintiff's interest in obtaining relief in the forum.

In the instant case, the limited and indirect nature of Defendant's contacts with Texas defeats any claim that the Defendant has purposefully interjected itself into this forum. The contacts which the Defendant has with Texas are so weak that the Defendant could not have reasonably anticipated being required to litigate in this Court. *Burger King,* 471 U.S. at 486, 105 S.Ct. at 2189.

### B. The Alter Ego Doctrine

In some circumstances, Fifth Circuit precedent and Texas law permit the contacts of one corporate entity with a forum to be imputed to another entity for jurisdictional purposes. In *Zahra Spiritual Trust v. United States,* 910 F.2d 240, 243 (5th Cir.1990), the Fifth Circuit listed several theories through which the corporate form may be disregarded: (1) when the corporate fiction is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or maintain a monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify a wrong.

■ Texas Courts do not apply the alter ego doctrine to pierce the corporate veil unless one of the alter ego corporations owns stock in the other corporation. *Permian Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 643 (5th Cir.1991); *Zahra,* 910 F.2d at 245–46.

■ In order to obtain personal jurisdiction over a non-resident corporation under the alter ego doctrine, the party alleging jurisdiction must show to the Court that a parent corporation dominates and controls the internal business operations and affairs of the defendant corporation to such an extent that the two companies do not in reality constitute separate and distinct entities. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159–60 (5th Cir.1983). In *Villar,* 780 F.Supp. at 1476, this Court enumerated several factors to be considered when engaging in this inquiry: (1) whether distinct and adequately capitalized financial units are incorporated and maintained; (2) whether daily operations of the two corporations are separate; (3) whether formal barriers between management of the two entities are erected, with each functioning in its own best interest; and (4) whether those with whom the corporations come into contact are apprised of their separate identity.

This Court further identified seven factors which are deemed important by Texas courts: (1) common stock ownership; (2) the method and degree of financing of the subsidiary by the parent; (3) common directors or officers; (4) separate books and accounts; (5) common business departments; (6) the

extent to which contracts between the parent and subsidiary favor one over the other; and (7) the connection of the parent's employee, officer, or director to the subsidiary's tort or contract giving rise to the suit.

■ In the present case, Defendant Chevron does not control Defendant CNL or the operations of any of Defendant Chevron's subsidiaries. All transactions between Defendant Chevron and its subsidiaries are formally entered in separate ledgers. While some of the officers of Defendant Chevron also serve as officers or directors of some of its subsidiaries, each subsidiary has its own board of directors, officers, and employees that determine its policies and carry on its business. Defendant Chevron owns stock in its subsidiaries, yet the board meetings, shareholder meetings, corporate minutes, records, and accounts of each company are entirely separate.

The Court finds that there is insufficient evidence to demonstrate that Defendant Chevron dominated and controlled the internal business operations of Defendant CNL to such a degree that the companies did not constitute separate and distinct corporate entities. Therefore, the Court finds there is insufficient evidence in the record to establish the existence of personal jurisdiction under the alter ego doctrine. *Hopper v. Ford Motor Co., Ltd.*, 837 F.Supp. 840, 844 (S.D.Tex.1993).

For the reasons stated above, Defendant Chevron Corporation's Motion to Dismiss is **HEREBY GRANTED.**

### III. Defendant CNL's Motion to Transfer Venue

■ Title 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding to transfer a case, a Court must consider several factors: the availability and convenience of witnesses and parties; the location of counsel; the location of books and records; the cost of

obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the Plaintiff's choice of forum. *Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993); *see, e.g., Hogan v. Malone Lumber, Inc.*, 800 F.Supp. 1441, 1443 (E.D.Tex.1992); *United Sonics v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex.1986); *Greiner v. American Motor Sales Corp.*, 645 F.Supp. 277, 278 (E.D.Tex. 1986); *Coons v. American Horse Show Association, Inc.*, 533 F.Supp. 398, 400 (S.D.Tex. 1982); *Morgan v. Illinois Cent. R.R. Co.*, 161 F.Supp. 119, 120 (S.D.Tex.1958). The Court will examine each factor in turn.

### A. Availability and Convenience of Witnesses and Parties

This factor is arguably the most important of those listed, *Dupre*, 810 F.Supp. at 825, and presently weighs in favor of a transfer to the Houston Division. The Plaintiff is a Louisiana corporation with its principal place of business in Louisiana. Defendant CNL does not maintain an office in Texas. Although Defendant CNL has consented to jurisdiction in Texas for the purposes of this litigation, it is not subject to the general in personam jurisdiction of courts in the State of Texas. Defendant Engicon is the only party in this suit with offices in the State of Texas, and these offices are located in Houston. Hence, this factor weighs in favor of transferring this case to the Houston Division.

### B. Location of Counsel

In the instant case, the primary counsel of Plaintiff and Defendants maintain offices in Houston. Although this Court concurs with legion other courts that of the factors listed, location of counsel is entitled to the least consideration[2], this factor nonetheless weighs in favor of a transfer to the Houston Division.

### C. Location of Books and Records

In some cases, the location of books and records is of paramount importance to

---

**2.** Indeed, the vast majority of cases hold that this factor is entitled to little or no consideration at all. *See* 15 Wright, Miller & Cooper § 3850, at

412–13 n. 5–6 (1986) (listing no less than sixty-one cases in which either of these conclusions was reached).

whether a case should be transferred. *Dupre,* 810 F.Supp. at 826; *Mobil Corp. v. S.E.C.,* 550 F.Supp. 67, 70–71 (S.D.N.Y.1982) (transferring a case where over 7,000 documents were expected to be produced); *American Fed. Casualty Agency, Inc. v. Cross Country Ins. Agency, Inc.,* 403 F.Supp. 1246, 1247 (E.D.Wis.1975) (refusing to transfer case where the substantial records of a corporation were at issue and were located in the district of that court.). In the present case, most, if not all, of the relevant documents are located in Houston.

### D. Cost of Obtaining Attendance of Witnesses

In any case, parties encounter certain unavoidable costs and encumbrances in proceeding to trial. It is rare in Federal Court that the chosen forum is the least expensive for every individual affiliated with the dispute. But, with advances in communication, transportation, and the preservation of testimony, costs and encumbrances that were once oppressive are now usually surmountable. Notwithstanding, this Court is certainly concerned with cases in which all parties and witnesses do not reside in Galveston. In those situations, the Court will look closely at the costs to all parties of trying the case here.

In this case, most of the key witnesses and parties are located in Houston while some witnesses reside in Louisiana. However, no witnesses reside in Galveston. A transfer to the Houston Division will result in a reduction of costs to both parties.

### E. Place of the Alleged Wrong

This Court considers this factor important in the venue determination, especially in times like these when the Court's docket is extremely crowded, and suits involving plaintiffs who live and were injured in another judicial district work to delay the trial of resident plaintiffs. As noted above, Plaintiff is a Louisiana corporation with its principal place of business in Louisiana. Plaintiff asserts that the underlying personal injury suit was settled in Galveston. Therefore, according to Plaintiff, Galveston is the place of the alleged wrong because issues of Plaintiff's duty to defend and indemnify resulted from the settlement.

The Court recognizes that the underlying suit was filed with this Court on November 18, 1993. However, this case was settled following mediation in Houston. The settlement of a case that was originally pending before this Court does not, by itself, serve as a sufficient contact with the Galveston Division. Thus, this factor weighs in favor of transferring this case to the Houston Division.

### F. Possibility of Delay or Prejudice if Transfer Granted

When considering a § 1404(a) Motion to Transfer, "[a] prompt trial ... is not without relevance to the convenience of parties and witnesses and the interest of justice." *Dupre,* 810 F.Supp. at 828 (quoting *Fannin v. Jones,* 229 F.2d 368, 369–70 (6th Cir.1956), *cert denied,* 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956)). This Court has always given great deference to this factor.

In the past, the Court has relied heavily on the delay and prejudice factor in deciding to transfer a case. The skyrocketing increase of filings with this Court has produced one of the busiest dockets in the country. Hence, it is more than probable that trial will be delayed for several months should this case remain in this Court.

### G. Plaintiff's Choice of Forum

This Court subscribes to the view that, while it cannot be said with certainty that a Court must exercise a strong presumption in favor of the Plaintiff's choice of forum, that choice is at least entitled to great deference. *Dupre,* 810 F.Supp. at 828. Indeed, it is this Court's consistent practice to honor a Plaintiff's choice of forum where factually justified. *Id.* However, the Court gives the Plaintiff's choice of forum close scrutiny when the Plaintiff does not live within the Galveston Division. In the instant case, this Court finds that venue is not proper in the Galveston Division.

After comprehensive analysis, in light of the totality of the circumstances, the Court concludes that this case should be trans-

ferred to the United States District Court for the Southern District of Texas, Houston Division.

■ In rendering a decision on whether to transfer a case, the Court must deliberate on the factors heretofore mentioned. The Court has undertaken to engage in a conscientious balancing of Plaintiff's and Defendant's interests. Here, in this case, where all of the relevant factors weigh heavily in favor of transfer, the Plaintiff's choice of forum alone is not controlling. *Coons v. American Horse Show Association, Inc.,* 533 F.Supp. 398, 400 (S.D.Tex.1982). Therefore, this Court finds that a transfer of this case to the Houston Division will best serve the interests of justice.

In conclusion, Defendant CNL's Motion to Transfer Venue is **HEREBY GRANTED.** The Court **ORDERS** this case **TRANSFERRED** to the United States District Court for the Southern District of Texas, Houston Division, Houston Division. Furthermore, Defendant Chevron Corporation is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order granting Defendant Chevron Corporation's Motion to Dismiss under Rule 12(b)(2), the Court DISMISSES Defendant Chevron Corporation from this case WITH PREJUDICE. All parties are to bear their own taxable costs incurred herein to date.

As to Defendant Chevron Corporation, THIS IS A FINAL JUDGMENT.