**SEARIVER MARITIME FINANCIAL HOLDINGS, INC., et al., Plaintiffs,**

v.

**Federico F. PEÑA, et al., Defendants.**

**Civil Action No. H-96-0722.**

United States District Court, S.D. Texas, Houston Division.

Sept. 6, 1996.

---

Richard N. Carrell, Fulbright & Jaworski, Houston, TX, for plaintiffs Seariver Maritime Financial Holding, Inc., Seariver Maritime, Inc., Seariver Maritime, International.

David A. Bono, U.S. Department of Justice, Washington, DC, for defendants Federico F. Pena, the U.S. Department of Transportation, Janet Reno and U.S. Department of Justice.

## *MEMORANDUM AND ORDER*

ATLAS, District Judge.

Plaintiffs have brought suit seeking a declaratory judgment that Section 5007 of the Oil Pollution Act of 1990 ("the OPA"), 33 U.S.C. § 2737, is unconstitutional and contrary to United States treaties and international law, and ask the Court to enjoin permanently the enforcement of Section 5007 against Plaintiffs. First Amended Complaint for Declaratory and Injunctive Relief [Doc. # 8] ("First Amended Complaint"). Plaintiffs invoke venue in this judicial district pursuant to 28 U.S.C. § 1391(e). The Government has filed a Rule 12(b)(3) Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) [Doc. # 9] ("Motion"), seeking dismissal or transfer for improper venue. The Court has considered the Motion, the numerous responses, replies, and surreplies, all other matters of record in this case, and the relevant authorities. For the reasons stated herein, the Government's Motion is **GRANT-**

**ED,** and this action is **DISMISSED WITH-OUT PREJUDICE.**

## FACTUAL BACKGROUND

In 1990, Congress passed the OPA, of which Section 5007 provides: "Notwithstanding any other law, tank vessels that have spilled more than 1,000,000 gallons of oil into the marine environment after March 22, 1989, are prohibited from operating on the navigable waters of Prince William Sound, Alaska." 33 U.S.C. § 2737.

Plaintiffs own the S/R Mediterranean, formerly named the Exxon Valdez. Plaintiffs state that the Mediterranean was the only U.S. flag vessel to which Section 5007 applied at the time of passage in 1990, and that the statute "effectively bars the vessel from participating in any trade from Alaska to other U.S. ports, which was the original purpose in constructing the vessel." Plaintiffs' Response to Defendants' Rule 12(b)(3) Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) [Doc. # 18] ("Plaintiffs' Response"), at 2.

Section 5007 has not yet been enforced against Plaintiffs. The First Amended Complaint does not allege that the vessel has yet done anything to violate Section 5007's prohibition against navigation in Prince William Sound, nor that any enforcement action has been taken or threatened against the vessel. Rather, the only allegation is that SeaRiver "wishes" to have the vessel sail through Prince William Sound so as to participate in Alaska North Slope trade, which was the purpose for the vessel's construction. First Amended Complaint, ¶¶ 23, 25.

Plaintiffs have presented evidence of the connection of this cause of action to Houston, including the following: the S/R Mediterranean is owned and operated by two Houston-based companies; all decisions regarding the ownership and operation of the vessel are made in Houston; the decision to construct the vessel was made in Houston; and the

restrictions of Section 5007 have caused "significant losses" for the Plaintiff companies, based in Houston, who own and operate the vessel. Plaintiffs' Response, at 2, 4; Affidavit of W.P. Rupp (Exhibit 1 to Plaintiffs' Response), ¶¶ 2, 4–5 and 7. Plaintiffs also argue that there is no more "convenient" district to try this case, and that it is not burdensome on the Government to litigate in Houston. Plaintiffs' Response, at 4.

The Government claims that "[t]he only district involved in these events is the District of Alaska, where the Exxon Valdez implicated Section 5007 by spilling approximately 11,000,000 gallons of oil, and also where that ship would have to operate before Section 5007 would be violated and could be enforced." Memorandum of Law in Support of Defendants' Rule 12(b)(3) Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) [Doc. # 10] ("Government's Memorandum"), at 1.[1] The Government points out that the only past event identified by Plaintiffs is the Valdez spill, which occurred in Alaska. *Id.* at 20. The Government also argues that, to the extent future events would be relevant, they would necessarily have to occur in Alaska since Section 5007 bars navigation only in Prince William Sound. *Id.* at 23.

## DISCUSSION

The applicable venue statute, 28 U.S.C. § 1391(e), provides that a civil action in which the defendant is the federal government may be brought (1) where the defendant resides, (2) where a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated," or (3) where the plaintiff resides if no real property is involved in the action.

Section 1406(a), 28 U.S.C., provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the

---

**1.** The Government argues that according to statements in Plaintiffs' First Amended Complaint, Plaintiffs have satisfied all three prerequisites to the application of Section 5007: oil was spilled into the "marine environment," more

than one million gallons of oil were spilled, and the oil was spilled after the statute's applicable date of March 22, 1989. Government's Memorandum, at 5–6.

interest of justice, transfer such case to any district or division in which it could have been brought."

## A. Is Venue Proper in the Southern District of Texas?

Plaintiffs argue that venue is appropriate under two provisions of Section 1391(e): because Plaintiffs reside in Houston, and because a "substantial part of the events or omissions giving rise to the claim occurred" in Houston.

**■ 1. Burden of Proof.**—Once Defendants have raised a proper objection to venue in this judicial district, the Plaintiffs bear the burden of proof to establish that the venue they chose is proper. *Smith v. Fortenberry*, 903 F.Supp. 1018, 1019–20 (E.D.La.1995); *French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F.Supp. 22, 25 (S.D.N.Y. 1994).[2] As another district court has noted, the burden should be on the plaintiff to institute an action in the proper place, because "[t]o hold otherwise would circumvent the purpose of the venue statutes—it would give plaintiffs an improper incentive to attempt to initiate actions in a forum favorable to them but improper as to venue." *Delta Air Lines, Inc. v. Western Conference of Teamsters Pension Trust Fund*, 722 F.Supp. 725, 727 (N.D.Ga.1989).[3]

Therefore, Plaintiffs bear the burden to establish that the Southern District of Texas is an appropriate venue for this action.[4]

**■ 2. Residence of Plaintiff.**—Several circuit courts, including the Fifth Circuit, have held that a plaintiff corporation resides in the place of its incorporation. *Tenneco Oil Co. v. EPA*, 592 F.2d 897, 899 (5th Cir. 1978); *see also Johns–Manville v. U.S.*, 796 F.2d 372, 373 (10th Cir.1986); *Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 283 (1st Cir.1983) (Breyer, J.); *Donnelley Corp. v. FTC*, 580 F.2d 264, 268–70 (7th Cir.1978). Furthermore, these cases indicate that it is of no import to the venue question where corporations do their business or make business decisions. *Johns–Manville v. U.S.*, 796 F.2d at 373; *Rosenfeld*, 702 F.2d at 283. Although Plaintiffs cite to several district court opinions holding that a residence of a corporate plaintiff includes the corporations' principal place of business, as well as its state of incorporation,[5] this authority, even if it were directly relevant, does not outweigh the binding authority directly supporting the Government's position.

The Court holds that Plaintiffs' residence is Delaware, the state of incorporation for all three Plaintiffs. Section 1391(e)(3) therefore provides no basis for venue in this judicial district.

**■ 3. Substantial Part of Events.**—It is, of course, possible in a given case that there could be more than one district in which a "substantial part of the events ... giving rise to a claim occurred," and therefore there could be more than one proper

---

**2.** As noted in *Smith*, 903 F.Supp. at 1019–20, a leading treatise states that "[t]here are cases holding that the burden is on the objecting defendant to establish that venue is improper. But 'the better view' and the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3826, at 259 (1986) (footnotes omitted). *But see Bounty-Full Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.*, 923 F.Supp. 950, 957–58 (S.D.Tex.1996); IA James Wm. Moore's Federal Practice, ¶ 0.340[1–4] (1995). To the extent the Court in *Myers v. American Dental Association*, 695 F.2d 716, 724 (3d Cir.), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983), reached a different conclusion, this Court elects to follow the vigorous dissent of Judge Garth.

**3.** Similarly, the Court notes that when a defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction. *See, e.g., Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

**4.** However, even if the Government did bear the burden to establish venue, based upon this record the Court would hold that the Government had met that burden.

**5.** Plaintiffs' Response, at 27 (citing *Milliken & Co. v. FTC*, 565 F.Supp. 511 (D.S.C.1983); *Pace Co. v. Department of the Army*, 344 F.Supp. 787 (W.D.Tenn.), *rev'd on other grounds*, 453 F.2d 890 (6th Cir.1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1192, 31 L.Ed.2d 248 (1972); *Upjohn Co. v. Finch*, 303 F.Supp. 241 (W.D.Mich.1969)).

venue for a certain cause of action. *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995); *Setco Enters. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994); *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 867 (2d Cir.1992). A court is not obliged to determine the "best" venue for a cause of action pending before it, but rather must determine only whether or not its venue is proper. *Setco,* 19 F.3d at 1281; *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994).[6] Therefore, even if another district's contacts with the controversy are more substantial than this district, the court need determine only whether substantial events occurred in this district.

The Government argues not that the connections with Alaska are "more substantial" than those with Texas, but rather that the only event giving rise to application of Section 5007 to Plaintiffs is the Alaskan oil spill, and therefore that *none* of the past events giving rise to Plaintiffs' claims have occurred in the Southern District of Texas. Defendants' Reply Regarding Venue [Doc. # 20] ("Government's Reply"), at 12. The Government argues further that any future "events" involving possible violations of Section 5007 giving rise to Plaintiffs' claim would take place in Alaska. Government's Memorandum, at 15–16. Plaintiffs, however, argue that the effects of Section 5007 (which, at the time of passage, applied to only SeaRiver's vessel) are felt in Houston, and that these local effects give rise to venue. The Court is not persuaded. The "effects" to which Plain-

tiffs refer are the injury resulting from Section 5007, rather than an "event giving rise to a claim" that could properly lay venue.

Plaintiffs further argue that, since this is a declaratory judgment action, the place of injury is relevant to the venue decision. Plaintiffs assert that jurisdictional principles of a party's "standing" are relevant and that venue in a declaratory judgment action lies where Plaintiffs may suffer a direct injury from the operation of the statute. Plaintiffs' Response, at 7–10.[7] In particular, Plaintiffs assert, without citation, as follows:

> [S]tanding principles, therefore, must guide the determination of venue. If the right to bring a constitutional declaratory judgment action depends on whether there is a "danger" of suffering a "direct injury" as a result of statute's "operation," then venue is logically found where that injury has already occurred and is occurring. Likewise, if standing principles do not require that a party "expose himself to actual arrest or prosecution" before bringing a declaratory judgment action, then it is flawed reasoning to argue that venue must only be where the party would be arrested. In short, the Government's venue argument is at odds with the standing requirement for a constitutional declaratory judgment action.

*Id.* at 9.[8]

Plaintiffs accurately cite cases that hold that a realistic danger of direct injury can

---

**6.** Plaintiffs cite to a Fifth Circuit case stating that "the court should not oppose the plaintiff's choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party." *Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1361 (5th Cir.), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980), *rev'd on other grounds,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). Of course, this holding would still require a finding that "substantial events" occurred in the district.

**7.** Plaintiffs assert that they have suffered injury in Houston because "SeaRiver in Houston has been injured and is being injured every day that the S/R Mediterranean is not participating in [Alaska North Slope] trade," because "decisions regarding the vessel's operation occur in Houston," and because, since the S/R Mediterranean

is the only vessel impacted by Section 5007, the statute affects its owner and operator "in the Southern District of Texas more 'substantially' than any other district in the nation." Plaintiffs' Response, at 12.

**8.** Plaintiffs argue in this declaratory judgment action that the claims they assert raise issues which "connect" the case to this judicial district: (i) irrationality and arbitrariness allegedly in violation of the Due Process and Equal Protection Clauses (arguably involving evidence that vessel is certified, that the legislative rationale of safety is justified, and that Plaintiffs' operations and of executive, administrative and maintenance duties regarding the S/R Mediterranean in Houston are relevant); (ii) legislative punishment, or bill of attainder (arguably involving evidence of Plaintiffs' costs and safety and possible "non-punitive impact"); (iii) ex post facto law (allegedly involving evidence of costs incurred as a result of being

confer standing on a party.[9] However, these authorities do not provide any support for the argument that standing must or even should be considered as a factor in determining proper venue. Indeed, the Court's authority for determining venue, Section 1391(e), makes no mention of standing, and Plaintiffs have directed the Court to no case construing Section 1391(e) in which standing was taken into consideration. Plaintiffs' arguments as to standing are not probative on the venue issue. If Plaintiffs' claims raise a genuine issue of standing, the question must be addressed by a court with proper venue.

Other courts, when determining proper venue for constitutional claims, have done so without addressing the standing issue. The Southern District of New York, in evaluating an action for declaratory judgment and injunctive relief concerning a New York state regulation imposing compensatory payments on milk produced outside the state of New York, held that venue was proper in the Southern District of New York, where most of the milk in question was sold. *Farmland Dairies v. McGuire,* 771 F.Supp. 80, 81–82 (S.D.N.Y.1991). The Court stated that it was the " 'distribution' of milk in the state of New York which trigger[ed] compensatory payments," and therefore this distribution was a "substantial part of the events giving rise to the claim." *Id.* The Court specifically rejected the defendant's argument that a "substantial part of the events" was established by either the enactment in Albany of statutes and orders establishing the system of compensatory payments, or by the plaintiffs' marketing and distribution decisions in other states. Similarly, this Court is not persuaded by Plaintiffs' analogous arguments that venue may be laid in this district because their decisions concerning the vessel are made here.[10]

■ Events that have only a tangential connection with the dispute at bar are not sufficient to lay venue. *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 294 (3d Cir.1994). Moreover, the Court is persuaded by the analysis of the Eighth Circuit, when it stated that, by referring to "events or omissions giving rise to the claim," it is likely that "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995). The *Woodke* Court held that venue for a "passing off" claim under Lanham Act lies where the alleged "passing off" occurred, but does not lie in the district that is the "location of the ultimate effect of the passing off," nor does it lie in district in which trailers, which were

forced to operate the S/R Mediterranean within the constraints of Section 5007); and (iv) double jeopardy (allegedly involving evidence regarding safety concerns as to the vessel). Plaintiffs' Response, at 13–14; Plaintiffs' Preliminary Brief on Constitutional Issues Requested by the Court on July 15, 1996 [Doc. # 27] ("Plaintiffs' Constitutional Brief").

9. *See, e.g., INS v. Chadha,* 462 U.S. 919, 936, 103 S.Ct. 2764, 2776, 77 L.Ed.2d 317 (1982) (party who demonstrated " 'injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury' " had standing) (citation omitted); *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) ("[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement"; however, "[i]f the injury is certainly impending, that is enough") (citations omitted); *KVUE, Inc. v. Moore,* 709 F.2d 922 (5th Cir.) (broadcaster, who challenged constitutionality of Texas statute regarding political advertising, had standing; broadcaster had suffered actual financial loss by obeying statute and prosecution was likely if statute was defied),

*aff'd,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984).

10. The unreported *Ameritech* case, upon which Plaintiffs rely heavily, interprets Section 1391(e)(2) in the context of a constitutional challenge to a federal statute prohibiting telephone companies from entering the video market in their telephone service areas. *See Ameritech Corp. v. U.S.,* No. 93–C–6642, 1994 WL 142864 (N.D.Ill. April 18, 1994) (Grady, J.). In holding that the telephone company's stated intention of providing video programming throughout a five-state region which included Michigan provided sufficient factual connection to Michigan to justify venue, the Court recognized that the suit involved "potential events" in Michigan sufficient to satisfy the "substantial events" test. *Ameritech,* 1994 WL 142864, at *3 & n. 2. The *Ameritech* case did not, as Plaintiffs suggest, hold that the fact that Michigan was "affected by the statute" was sufficient in itself to confer venue. *See* Plaintiffs' Response, at 9. Moreover, since it is unreported and from a different judicial district, *Ameritech* is not binding on this Court.

"passed off," were manufactured. *Id.* The manufacture of the trailers, the Court explained, was not itself wrongful, and though the manufacture was connected to the dispute at bar, it did not give rise to the claim. *Id.* at 985–86. *See also Smith v. Fortenberry,* 903 F.Supp. 1018, 1020 (E.D.La.1995) (injurious accident, which occurred in Mississippi, was substantial event sufficient to confer venue for resulting personal injury action; venue was not proper in Louisiana merely because plaintiff had received medical treatment for his injuries there).

█ In the instant case, Plaintiffs' decisions in Houston regarding the S/R Mediterrean and the harm felt in Houston by the vessel's inability to sail to Prince William Sound also do not bear a sufficiently substantial connection to the events giving rise to Plaintiffs' claims. Moreover, unlike the analysis under 28 U.S.C. § 1404(a), convenient access to witnesses and documents, even if assumed to weigh in favor of Plaintiffs, does not determine the place of substantial events so as to lay venue in this district. *Cf. Americas Ins. Co. v. Engicon, Inc.,* 894 F.Supp. 1068, 1074 (S.D.Tex.1995).[11]

█ Therefore, the Court holds that a "substantial part of the events or omissions giving rise to the claim" did not occur in this judicial district, and that Section 1391(e)(2) does not provide a basis for venue here.

## B. Transfer Pursuant to 28 U.S.C. § 1406(a)

It appears that, while the Southern District of Texas is not an appropriate venue for litigation of this action, several other districts would be appropriate.

Of the possible venues, the Government has expressed a preference for the District of Alaska, where it appears that a substantial part of the events giving rise to Plaintiffs' claim occurred. *See* 28 U.S.C. § 1391(e)(2). The Government argues that transfer to Alaska is in the interest of justice because Alaska has handled all litigation arising from the Valdez spill. The Government further argues that transfer to Alaska is compelled by a Consent Decree from two cases concerning the Exxon Valdez oil spill which are pending in the District of Alaska. Defendants' Unopposed Motion for Leave to File Supplemental Authority Regarding Defendants' Rule 12(b)(3) Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) [Doc. # 13] ("Government's Supplemental Memorandum"), at 2–3; Government's Reply, at 18–23.[12]

---

11. Plaintiffs also assert that the Government, in Plaintiffs' opinion, could bring an enforcement action in the Southern District of Texas, and therefore that venue is proper for Plaintiffs' declaratory judgment action. Plaintiffs' Further Response to "Reply Regarding Venue" [Doc. # 23], at 2. This case is not an enforcement action and, in any event, Plaintiffs cite no authority for their assertion.

12. The Consent Decree, in a section entitled "Retention of Jurisdiction," states that:

[t]he Court shall retain jurisdiction of this matter for the purpose of entering such further orders, direction, or relief as may be appropriate for the construction, implementation, or enforcement of this Agreement.

Consent Decree (attached to Government's Supplemental Memorandum), ¶ 38. The Government therefore argues that the District of Alaska has retained jurisdiction over all questions regarding the construction of the agreement and consent decree, including the "Releases and Covenants Not to Sue by Exxon and Exxon Pipeline," which states:

Effective upon Final Approval, Exxon and Exxon Pipeline release, and covenant not to sue or file any administrative claim against, each of the Governments and their employees with respect to any and all civil claims, including without limitation claims for Natural Resource Damages and cleanup costs, under Federal or state statutes and implementing regulations, common law, or maritime law, that arise from, relate to, or are based on, or could in the future arise from, relate to, or be based on: ... (3) any other civil claims that could be asserted by Exxon or Exxon Pipeline against either of the Governments relating to or arising from the Oil Spill.

Consent Decree, ¶ 20. The Government argues that Plaintiffs' suit violates Paragraph 20 and that Plaintiffs could have asserted the instant claim when it signed the release and covenant not to sue. Government's Supplemental Memorandum, at 4–5. The Government further argues that comity requires transfer to Alaska, and that such transfer would avoid interference with the integrity of the Consent Decree and ensure the orderly administration of justice. *Id.* at 6.

Plaintiffs, in turn, argue that the Consent Decree does not require transfer to Alaska since the federal statute at issue was passed 18 months after the Exxon Valdez' oil spill and that, in any

Plaintiffs prefer the District for the District of Columbia, which is Defendants' residence. *See* 28 U.S.C. § 1391(e)(1). Plaintiffs argue that the District of Alaska has not heard any case concerning the constitutionality of Section 5007, nor of any other provision of the OPA, but merely on the damages and liability issues arising from the oil spill itself. Plaintiffs' Constitutional Brief, at 9. The parties strenuously dispute, among other things, whether or not the Consent Decree's forum selection clause is binding on the corporate Plaintiffs at bar, and whether or not any questions as to proper construction of the Consent Decree must be heard by the Alaska court. *See supra* note 12.

The Court is not in a position on this record to choose definitively between the parties' desired fora. While the District of Columbia would appear to be an obvious choice in light of Plaintiffs' challenge to the constitutionality of federal legislation, the issues of the application of the Consent Decree are not insubstantial. Moreover, since either venue appears to be proper, there must be analysis under 28 U.S.C. § 1404 by a court with venue over Plaintiffs' claims.[13]

Plaintiffs should be given the opportunity to select the forum they prefer as between Alaska and the District of Columbia. The Court therefore declines to make the venue selection, and holds that it is not "in the interest of justice" to transfer this action to either judicial district. *See* 28 U.S.C. § 1406(a). This action is dismissed without prejudice.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' **Rule 12(b)(3) Motion to Dismiss For Improper Venue or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a)** [Doc. # 9] is **GRANTED**. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

event, the Decree binds only SeaRiver Maritime Financial Holdings, Inc., and not SeaRiver Maritime, Inc. (the current operator of the vessel) and SeaRiver International, Inc. (the current owner of the vessel). Plaintiffs' Response, at 20–21. Plaintiffs further argue that the Government should not be permitted to transform Paragraph 20 into a general release, since the paragraph "does not encompass any and all civil claims from the beginning of the world to the date of the release." *Id.* at 23. In addition, Plaintiffs contend that, if the Government's argument is correct, then the Government has waived its right to enforce Section 5007 in any district. *Id.* at 25. Finally, Plaintiffs argue that a federal court may review and interpret a consent decree entered by another court. Plaintiffs' Constitutional Brief, at 10.

13. The Section 1404 factors, to be considered by a Court when deciding among appropriate venues, include *inter alia* the place of the alleged wrong, the availability and convenience of witnesses and parties, the location of books and records, and the possibility of delay and prejudice. *See, e.g., Americas Ins. Co. v. Engicon, Inc.,* 894 F.Supp. 1068, 1074 (S.D.Tex.1995). In the Court's opinion, these factors do not weigh definitively in favor of either Alaska or the District of Columbia in this case.