**Bill and Marcella CONNER, Appellants,**

v.

**CONTICARRIERS AND TERMINALS, INC., Appellee.**

**No. 14–95–00332–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 30, 1997.

Opinion Overruling Rehearing and Ordering Opinion Published April 10, 1997.

John W. Stevenson, David A. Furlow, Kenneth M. Morris, Houston, for appellants.

Chris A. Lorenzen, Kathleen Hopkins Alsina, Houston, Michael A. McGlone, Kent B. Ryan, New Orleans, LA, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## PLURALITY OPINION

HUDSON, Justice.

Bill and Marcella Conner ("the Conners") appeal from the trial court's order sustaining ContiCarriers and Terminals, Inc.'s ("ContiCarriers") motion for special appearance. The issues before this court are: (1) whether maintaining an agent for service and being authorized to do business in the state constitutes consent to a Texas court's general personal jurisdiction; and (2) if ContiCarriers's corporate presence is not sufficient to establish consent to jurisdiction, whether the corporation had the necessary, "systematic and continuous" contacts with Texas to warrant a state court's exercise of general personal jurisdiction. We find ContiCarriers did not consent and did not have the necessary contacts with Texas to warrant the exercise of a state court's jurisdiction. We affirm the trial court's order.

On July 24, 1991, the *MV Conti Arlie*, a push boat, collided with the *MV Easy Street* in the middle of the Mississippi River. Bill Conner, a chief engineer on the *MV Conti Arlie*, was injured in the accident. Conner was employed by ContiCarriers, the operator of the *MV Conti Arlie*. ContiCarriers is a subsidiary of Continental Grain, Inc. ("Conti-

nental Grain"), a Delaware corporation with its principal place of business in Chicago, Illinois. The other vessel in the accident, the *MV Easy Street*, was operated by Hollywood Marine, Inc., a Texas corporation. The Conners, who are Louisiana residents, filed suit against ContiCarriers, Continental Grain, Hollywood Marine, and several other defendants, seeking damages for negligence under common law and the Jones Act. *See* 46 U.S.C.App. § 688 (West Supp.1996).

ContiCarriers responded by filing a special appearance claiming the trial court had no personal jurisdiction over it. The trial court sustained ContiCarriers' special appearance and entered forty-nine findings of fact and six conclusions of law. On January 20, 1995, a severance of the Conners' claims rendered the trial court's order appealable against ContiCarriers. In six points of error, the Conners contend the trial court erred in sustaining ContiCarriers' special appearance.

Rule 120a of the Rules of Civil Procedure allows a nonresident defendant to challenge a court's jurisdiction without voluntarily subjecting himself to the jurisdiction of the court or waiving any objections to the court's actions. *C.W. Brown Mach. Shop, Inc. v. Stanley Mach. Corp.*, 670 S.W.2d 791, 793 (Tex.App.—Fort Worth 1984, no writ). A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990).

### I. THE LONG ARM STATUTE

The long-arm statute expressly authorizes the exercise of jurisdiction over a nonresident who does business in Texas. While the statute enumerates several specific acts that constitute "doing business," it also broadly includes any "other acts that may constitute doing business." *Schlobohm*, 784 S.W.2d at 355–57; TEX. CIV. PRAC. & REM.CODE ANN.

§§ 17.041–17.069 (Vernon 1986 & Supp. 1996).[1]

While the Conners contend that ContiCarriers has, in previous years, contracted with Texas businesses to perform work in this state, the record does not substantiate this claim. In each instance cited by the Conners, the record either (1) reflects that ContiCarriers wholly performed the work outside Texas, or (2) fails to show that ContiCarriers contracted with a Texas business. Thus, none of the specific acts enumerated in the statute are present here. We must, therefore, examine whether ContiCarriers' conduct falls within the "other acts" provision of the statute. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986).

■ The broad "other acts" language of the long-arm statute permits an expansive reach, limited only by federal constitutional requirements of due process. The issue presented here, therefore, is whether a finding of jurisdiction under the facts of this case is consistent with federal due process protections. *See Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991); *Schlobohm,* 784 S.W.2d at 357; *see also Dominion Gas Ventures, Inc. v. N.L.S., Inc.,* 889 F.Supp. 265, 267 (N.D.Tex.1995).

## II. DUE PROCESS

■ The requisite due process considerations are: (1) whether the nonresident has purposefully established "minimum contacts" with the forum state; and, if so, (2) whether the exercise of jurisdiction comports with fair play and substantial justice. *Guardian Royal,* 815 S.W.2d at 226.

■ **A. Minimum Contacts:** Because an individual should have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign, a nonresident defendant will not be haled into a foreign jurisdiction solely because of "random, fortuitous or attenuated" contacts or because

of the "unilateral activity of another party or third person." The nonresident must take some action or engage in some conduct to create a "substantial connection" with the forum state adequate to establish minimum contacts. *Id.*

■ While fair warning or foreseeability is an important consideration in deciding whether a nonresident defendant has purposefully established "minimum contacts" with a forum state, it is not an independent component of the minimum contacts analysis. Foreseeability, however, is implicit in determining whether there is a "substantial connection" between the nonresident defendant and the forum state. If, by his actions or conduct, a nonresident has purposefully availed himself of a state's benefits and the protection of its laws, he has established a "substantial connection" with the state and subjected himself to a state court's jurisdiction. *Guardian Royal,* 815 S.W.2d at 226–227.

■ The minimum contacts requirement is satisfied if either *general* or *specific* jurisdiction exists. *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 98 (Tex.App.— Houston [14th Dist.] 1995, writ denied). *Specific jurisdiction* attaches when the plaintiff's cause of action arises out of, or relates to the nonresident defendant's contacts with the forum state. To invoke a state's specific jurisdiction, the defendant's activities must have been "purposefully directed" to the forum and the litigation must arise from or relate to those activities. In contrast, a nonresident defendant may be subject to a state's *general jurisdiction* because of continuous and systematic contacts with the state, even if the underlying cause of action did not arise from purposeful conduct in the state. *Vosko,* 909 S.W.2d at 98 (citing *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995)). Here, the parties agree that *general,* not specific, jurisdiction applies to this case.

---

1. The statute provides:
 In addition to *other acts* that may constitute doing business, a nonresident does business in this state if the nonresident:
 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
 (2) commits a tort in whole or in part in this state; or
 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.
 TEX. CIV. PRAC. & REM CODE ANN. § 17.042 (Vernon 1986) (emphasis added).

When general jurisdiction is alleged, a court's minimum contacts inquiry is broader, more demanding, and requires a showing of *substantial* activities in the forum state. *Schlobohm,* 784 S.W.2d at 357.

**B. Fair Play and Substantial Justice:** Once a nonresident's minimum contacts with the forum state have been established, those contacts are evaluated in light of other legal factors to determine whether a finding of personal jurisdiction comports with principles of substantial justice and fair play. These factors include (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. Sometimes the exercise of jurisdiction may not be reasonable *even if* the nonresident defendant has purposely established minimum contacts with the forum state. *Guardian Royal,* 815 S.W.2d at 228. In such an instance, however, the nonresident defendant must present a *compelling* argument establishing that the exercise of jurisdiction would be unreasonable. *Guardian Royal,* 815 S.W.2d at 231; *Vosko,* 909 S.W.2d at 98–99.

### III. STANDARD OF REVIEW

Existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by the resolution of underlying factual disputes. The standard of review to determine the appropriateness of the trial court's resolution of those facts is an ordinary *sufficiency of the*

evidence review. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex. App.—Dallas 1993, writ denied). The scope of that review includes *all evidence in the record.*[2] *Vosko,* 909 S.W.2d at 99.

If a special appearance is based on undisputed or otherwise established facts, an appellate court shall conduct a *de novo* review of the trial court's order granting a special appearance. *See Hotel Partners v. Craig,* No. 05–92–01625–CV, slip op. at 2, 1994 WL 719707 (Tex.App.—Dallas, December 30, 1994, n.w.h.) (citing *Guardian Royal,* 815 S.W.2d at 232). Despite the Conners' concessions in their briefs that "almost all the jurisdictional evidence is undisputed," and that the findings of fact are not "without evidentiary support," they attack the trial court's six conclusions of law. The Conners contend the court's conclusions are erroneous because: (1) *uncontroverted* facts establish ContiCarriers' consent to Texas courts' jurisdiction when it obtained an authorization to do business and continued to maintain an agent in the state for service; (2) the *undisputed* evidence in the record does not support the court's conclusions of law; (3) the trial court's findings of fact are incomplete because they ignore *undisputed* evidence; and (4) the trial court failed to properly apply the law to the *undisputed* facts.[3] Thus, by their nature, Conners' assertions do not raise factual issues. *See Foster v. Foster,* 884 S.W.2d 497, 500 (Tex.App.—Dallas 1993, no writ).

Whether the appropriate law has been applied to undisputed facts in a conclusion of law is a question of law that is also subject to *de novo* review. *Craig,* slip op. at 2 (citing *Guardian Royal,* 815 S.W.2d at 232); *see*

---

2. The Conners filed a motion for reconsideration supported by documentary evidence not presented at the special appearance hearing. Because we must review all the evidence in the record, we need not separately address the Conners' point of error complaining about trial court's decision to overrule this motion.

3. ContiCarriers suggests that the Conners cannot complain that the trial court's findings of fact are incomplete because they do not challenge the court's refusal to enter additional proposed findings. Such additional findings were not required because they would have been merely evidentiary. *Rafferty v. Finstad,* 903 S.W.2d 374, 376

(Tex.App.—Houston [1st Dist.] 1995, writ denied); *Hunter v. NCNB Texas Nat'l Bank,* 857 S.W.2d 722, 727 (Tex.App.—Houston [14th Dist.] 1993, writ denied). More importantly, in an appeal from an order sustaining a special appearance, this court is required to review the uncontroverted evidence in the record that is not reflected in the court's findings of fact to determine whether its conclusions of law are supported by the evidence as a whole. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex. App.—Houston [14th Dist.] ), *writ ref'd n.r.e.,* 699 S.W.2d 199 (Tex.1985).

*also Nelkin v. Panzer,* 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) (conclusions of law are reviewable *de novo* as a question of law). Accordingly, we will conduct a *de novo* review of the issues in this appeal.

## IV. ANALYSIS

The Conners agree that this is a general jurisdiction case and that the cause of action does not arise from any contact ContiCarriers had with Texas. They argue, however, that the trial court acted contrary to the law when it refused to recognize that ContiCarriers consented to the personal jurisdiction of a Texas court at the moment it obtained authorization to do business and registered an agent for service in Texas.[4]

**A. Consent to jurisdiction:** Before the landmark *International Shoe* decision, a court's jurisdiction to render judgment *in personam* was to be found exclusively in the court's power over the defendant's person. The only way a state could exercise jurisdiction over a person or corporation was if they were *physically present* within the state. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citing *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565. (1877)).

To circumvent the rigid *Pennoyer* rule, Texas and many other states began to require that all nonresident corporations appoint an in-state agent for service of process before transacting business within the state. *See Burnham v. Superior Court,* 495 U.S. 604, 617, 110 S.Ct. 2105, 2114, 109 L.Ed.2d 631 (1990) (plurality opinion). Before *International Shoe,* the Supreme Court upheld these statutes under the Due Process Clause on grounds that they complied with *Pennoyer*'s requirement of either "consent" or

"presence." These prerequisites, however, were often recognized as purely fictional when applied to a nonresident corporation. *Burnham,* 495 U.S. at 618, 110 S.Ct. at 2114. In *International Shoe,* the court first recognized that the true basis for jurisdiction in these cases derived not from the use of a legal fiction, but from *"the quality and nature of the [corporate] activity* in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159 (emphasis added). The Supreme Court clarified this principle first in *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and later in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In *Perkins,* the president of a foreign corporation that engaged in business in the forum state was served while present in that state. Noting that the suit's cause of action neither arose in the forum state, nor did it relate to the corporation's business in the state, the court held that the essence of the issue is one of general fairness to the corporation:

> Appropriate tests for [general fairness] are discussed in *International Shoe Co. v. Washington* [citation omitted]. The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case. *The corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may*

---

**4.** In conclusions of law 1, 3, and 4, the court determined:
> 1. The cause of action asserted by Plaintiffs does not arise out of or relate to any contact which [ContiCarriers] had in the State of Texas. Therefore, the Court cannot exercise specific *in personam* jurisdiction over [ContiCarriers].
>
> \* \* \* \* \* \*
>
> 3. Compliance with the Texas registration statute only consents to personal jurisdiction

> where such jurisdiction is constitutionally permissible. Such jurisdiction is not constitutionally permissible in this case.
> 4. [ContiCarriers'] appointment of an agent for service of process and its registration to do business in Texas do not suffice to satisfy the criteria for the exercise of general jurisdiction under the facts of this case.

*be served provide a helpful but not a conclusive test.*

*Perkins,* 342 U.S. at 445, 72 S.Ct. at 418 (emphasis added). The Court examined the nature of the corporation's contacts in the state and, based on those "continuous and systematic" contacts, held that the due process clause did not prohibit the exercise of general personal jurisdiction. *Perkins,* 342 U.S. at 448, 72 S.Ct. at 420.

In *Helicopteros,* employees of a Peruvian consortium were killed in a helicopter crash in Peru. Their survivors brought a wrongful death action in Texas against the Columbian corporation that owned the helicopter. The defendant corporation had the following contacts with Texas: (1) its chief executive officer visited Texas to negotiate the contract to provide the transportation services in Peru; (2) it accepted checks drawn from a Texas bank; (3) it purchased helicopters and equipment from a Texas manufacturer; (4) it sent prospective pilots to train in Texas; and (5) it sent management and maintenance personnel to Texas for technical consultation. *Helicopteros,* 466 U.S. at 411, 104 S.Ct. at 1870. The court found the foreign corporation's contacts in Texas were not of a "continuous and systematic" nature and were insufficient to satisfy the requirements of due process. *Helicopteros,* 466 U.S. at 414–19, 104 S.Ct. at 1872–74.

The Conners contend that while systematic and continuous corporate activities may provide a basis for jurisdiction, the *Burnham* court suggested that it had not abandoned or repudiated the traditional notion of *in personam* jurisdiction flowing from physical presence within the state. The Conners argue, therefore, that ContiCarriers automatically consented to jurisdiction when it registered an agent for service in Texas. We disagree for two reasons. First, *Burnham* is a plurality opinion and does not provide the persuasive, binding authority the Conners

attribute to it. Second, *Burnham* does not speak to personal jurisdiction over foreign corporations. *Burnham* involved a nonresident who was sued for divorce in California and served with process while visiting in that state. *Burnham,* 495 U.S. at 608, 110 S.Ct. at 2109. Justice Scalia expressly exempted foreign corporations from his analysis stating that "corporations ... have never fitted comfortably in a jurisdictional regime based primarily upon 'de facto power over the defendant's person.'" *Burnham,* 495 U.S. at 610 n. 1, 110 S.Ct. at 2110 n. 1. *Burnham* simply does not support the Conners' position.

Further, we disagree with the Conners' assertion that *International Shoe* (1) did not overrule past precedent and (2) does not require a minimum contacts analysis when a foreign corporation designates an agent for service in the forum. The court has said that *"all assertions of state-court jurisdiction* must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977)(emphasis added).[5] The *Shaffer* court overruled its prior decisions relying on the rationales of *Pennoyer* and *Harris* "to the extent" that those cases were inconsistent with the *International Shoe* standard. *Id.,* at n. 39. In *International Shoe,* the court observed that it had formerly relied upon the legal fiction of consent to suit resulting from an implied presence of a corporation, but stated that employment of the fiction could only be realistically justified by the *nature* of the authorized acts. *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159. The court held that the criteria by which "the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159.

---

**5.** The Conners argue that the holding in *Shaffer* is limited to absent defendants and inapplicable to this case. This argument is based on the flawed premise that merely because a foreign corporation is authorized to do business and has an agent for service in the state, it is "present" in the state and consents to jurisdiction. Both *Perkins* and *Burnham* rejected that premise. *See*

*Burnham,* 495 U.S. at 610 n. 1, 110 S.Ct. at 2110 n. 1; *Perkins,* 342 U.S. at 445, 72 S.Ct. at 418. The fiction of consent to jurisdiction implied solely from a foreign corporation's authorization to do business or designation of an agent for service is simply another "ancient form without substantial modern justification." *Shaffer,* 433 U.S. at 212, 97 S.Ct. at 2584.

414

In assessing a foreign corporation's contacts in the forum state, the Supreme Court observed in both *Perkins* and *Helicopteros* that the foreign corporation in question had never been authorized to do business in the forum state and never had a local agent for service of process. *See Perkins,* 342 U.S. at 439 n. 2, 72 S.Ct. at 415 n. 2; *Helicopteros,* 466 U.S. at 411, 104 S.Ct. at 1870–71. The Conners suggest that these criteria were the controlling factors in both *Helicopteros* and *Perkins.* While the court recited the facts of each case before engaging in a "continuous and systematic" contacts analysis, we perceive the rationale for the court's holding to rest on the totality of the facts and not upon the presence or absence of a single controlling element.

Our holding is supported by recent decisions of the United States Fifth Circuit Court of Appeals and the Texas Court of Appeals for the Thirteenth District. The Fifth Circuit held in *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993), that an exercise of jurisdiction over a nonresident corporation is constitutionally permissible *only* when the foreign corporation's continuous and systematic contacts create a "general business presence" in the forum state. The court declared that "being qualified to do business ... 'is of no special weight' in·evaluating general personal jurisdiction" and "a foreign corporation that properly complies with the Texas registration statute *only consents* to personal jurisdiction *where such jurisdiction is constitutionally permissible."* *Id.* at 181, 183. (emphasis added).

*Wenche Siemer* was a wrongful death action filed in Texas by foreign nationals against a Kansas aircraft manufacturer after one of the defendant's planes crashed in Egypt. Relying on *Burnham,* the plaintiffs argued that jurisdiction was proper in Texas though the defendant had virtually no contacts with the state because the defendant was authorized to do business in Texas and had a designated agent for service in the state. The court rejected the plaintiffs' argument and held that *Burnham* "did not involve a corporation and did not decide any jurisdictional issue pertaining to corporations." *Id.* at 181–82. The court went on to state that "[c]ontrary to plaintiffs' assertion, nothing in either plurality opinion suggests that service on a corporation's registered agent 'automatically subjects the corporation to jurisdiction.'" *Id.* at 182. The court concluded that "[n]ot only does the mere act of registering an agent not create [the defendant's] general business presence in Texas, it also does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter." *Id.* at 183.[6]

While *Wenche Siemer* recognizes the theory of consent to jurisdiction, it holds that such consent by a foreign corporation cannot occur unless the corporation has continuous and systematic contacts with the forum state. Despite the widespread acceptance of *Wenche Siemer* as controlling authority by the federal district courts of this circuit,[7] the Conners contend *Wenche Siemer* is wrongly decided; they argue the court ignored its own precedent in *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260 (5th Cir.1981) and *Cowan v. Ford Motor Co.,* 694 F.2d 104 (5th Cir.1982). We disagree.

The *Prejean* court decided whether the three foreign corporations sued by the plaintiffs maintained the minimum contacts neces-

6. *See Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987). In *Bearry,* the court held that the foreign corporation's introduction of its products into the stream of commerce in Texas did not alone create a "general presence" in that state sufficient to warrant the exercise of general personal jurisdiction. 818 F.2d at 375–76. Although the *Wenche Siemer* court stated that the facts of *Bearry* provided "a clear precedent for the resolution of this jurisdictional dispute," *Bearry* did not deal with the issue of consent. The *Bearry* court only briefly mentioned consent in terms that support ContiCarriers' position. *Id.* at 375.

7. *See Clark v. America's Favorite Chicken Co.,* 908 F.Supp. 390, 399 (E.D.La.1995); *Dominion Gas,* 889 F.Supp. at 267–68; *Arkwright Mut. Ins. Co. v. Transportes de Nuevo Laredo,* 879 F.Supp. 699, 700 (S.D.Tex.1994); *Kern v. Jeppesen Sanderson, Inc.,* 867 F.Supp. 525, 536 (S.D.Tex.1994); *Samuelson v. Honeywell,* 863 F.Supp. 1503, 1507 (E.D.Okla.1994); *Leonard v. USA Petroleum Corp.,* 829 F.Supp. 882, 886–90 (S.D.Tex.1993); *Follette v. Clairol, Inc.,* 829 F.Supp. 840, 843–44 (W.D.La.), *aff'd,* 998 F.2d 1014 (1993).

sary to be within the reach of the Texas long-arm statute. 652 F.2d at 1267–70. The court reversed the dismissal of one of the corporate defendants and remanded the case to the trial court. For purposes of remand, the court, in dictum, observed that diversity jurisdiction *may* have been destroyed by the defendant's subsequent license to do business in the state. *Id.* at 1270 n. 21. Dictum in a footnote is simply not a holding that a corporation's registration to do business in Texas is, by itself, consent to personal jurisdiction in Texas.

In *Cowan,* a Texas resident sued a Michigan corporation in Mississippi for personal injuries arising from an accident in Texas. 694 F.2d at 105. In concluding that jurisdiction was proper in Mississippi where the foreign corporation was authorized to do business and had designated an agent for service, the court relied entirely on Mississippi law. *Id.* at 105–06. The court also conducted a due process analysis and found that the defendant corporation had engaged in *substantial* business in the forum state. *Id.* at 106–07. Neither *Cowan* nor *Prejean* provide support for the Conners' position, and their argument that the *Wenche Siemer* court ignored its own precedent is without merit. We conclude that *Wenche Siemer* was correctly decided and is persuasive authority.

Similarly, the Thirteenth Court of Appeals held that the designation of an agent for service of process in Texas does not amount to a general consent to jurisdiction, but is merely one of many factors to be considered in determining whether minimum contacts exist. *Juarez v. United Parcel Service de Mexico,* 933 S.W.2d 281 (Tex.App.—Corpus Christi 1996, n.w.h.). In *Juarez,* a Mexican pedestrian was accidentally struck and killed in Matamoros, Mexico, by a truck owned by a Mexican corporation. The foreign corporation sent its trucks into Texas approximately ten times a day to transfer packages, maintained Texas insurance, and had appointed an agent for service of process. Analyzing the contacts and the nature of the accident, the court found that any assertion of jurisdiction by a Texas court would violate traditional notions of fair play and substantial justice. *Juarez,* 933 S.W.2d at 285.

We find, therefore, that the test enunciated in *Helicopteros* and *Perkins* is appropriate to determine whether a forum state has general personal jurisdiction over foreign corporations. In doing so, we do not repudiate consent to jurisdiction as a viable doctrine.[8] "[T]he personal jurisdiction requirement is a waivable right" and "there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *see also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–05, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982).[9] After a careful review of the other Supreme Court cases cited by the Conners as examples of

---

8. The Conners argue that sections 32, 43, and 44 of the RESTATEMENT (SECOND) CONFLICT OF LAWS recognize the doctrine of consent to jurisdiction, but they fail to cite any Texas authority adopting the RESTATEMENT. The RESTATEMENT measures the scope of a foreign corporation's consent to a jurisdiction solely by the express terms of the instrument that appoints an agent for service within the foreign state. *See* RESTATEMENT (SECOND) CONFLICTS OF LAW § 44 (1967). The Texas Business Corporation Act does not address the issue of consent. *See* TEX. BUS. CORP. ACT ANN. art. 8.10.

9. While consent was not an issue in either *Compagnie des Bauxites* or *Burger King,* the court cited other examples of consent to jurisdiction. *See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (upholding forum selection clause in contract); *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) (parties consented to jurisdiction by contract appointing an agent for service in the state); *Petrowski v. Hawkeye–Security Co.,* 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956) (party stipulated to jurisdiction); *Adam v. Saenger,* 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938) (plaintiff, by bringing initial suit, submitted to the jurisdiction of the court in defendant's cross-action); *McDonald v. Mabee,* 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917) (party may submit to jurisdiction by an appearance). None of the examples cited involve the type of consent asserted here and therefore, are irrelevant. *See also Leonard v. USA Petroleum Corp.,* 829 F.Supp. 882, 888 (S.D.Tex.1993) (modes of consent listed in *Compagnie des Bauxites* does not include appointment of an agent).

consent, we find them to be irrelevant to our consideration of this case.[10]

The Conners claim that we are obliged by prior decisions of this court and the First Court of Appeals to find that ContiCarriers' consented to jurisdiction when it designated an agent for service of process. *See Goldman v. Pre–Fab Transit Co.,* 520 S.W.2d 597, 598 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Acacia Pipeline Corp. v. Champlin Exploration, Inc.,* 769 S.W.2d 719, 720 (Tex.App.—Houston [1st Dist.] 1989, no writ).

In *Goldman,* a Texas resident sued an Illinois corporation in Texas for damages arising out of an accident in Louisiana. There is *no* suggestion the foreign corporation did business in Texas. This court held that the foreign corporation, which was authorized to do business in Texas and maintained a registered agent for service in Texas, consented to "amenability to jurisdiction for purposes of all lawsuits within the state." *Goldman,* 520 S.W.2d at 598. Rejecting the defendant foreign corporation's argument that due process considerations precluded amenability to jurisdiction, this court held that the theory of consent to jurisdiction was implicit in article 8.10 of the Texas Business Corporation Act, stating that "the rationale behind the theory of consent is that in return for the privilege of doing business in the state and enjoying the same rights and privileges of a domestic corporation [under article 8.02 of the Business Corporation Act], the foreign corporation has consented to amenability to jurisdiction for purposes of all lawsuits within the state." *Id. Goldman,* howev-

er, is unsupported by *any* relevant case law, and we find it is in conflict with binding U.S. Supreme Court precedent. We find *Goldman,* therefore, to be wrongly decided.

In *Acacia,* a Texas corporation sued a Delaware corporation in Texas for breach of a gas purchase contract made in Oklahoma. Following *Goldman,* the court held that a foreign corporation that was authorized to do business in Texas and maintained an agent for service in Texas consented to in personam jurisdiction. *Acacia,* 769 S.W.2d at 720. However, the court also recited facts detailing the corporation's substantial contacts with Texas. *Id.* at n. 1. To that extent, *Acacia's* recitation of substantial contacts is consistent with the due process requirements of *Perkins, Helicopteros,* and *Wenche Siemer.* To the extent that *Acacia* follows *Goldman,* we find it unpersuasive.

In summary, we find that a foreign corporation cannot logically enjoy the same privileges as a domestic corporation unless it actually does business in the state. A foreign corporation seeking to do business in Texas *must* obtain a certificate of authority and *must* appoint an agent for service or otherwise have the secretary of state automatically become its agent for service. A foreign corporation, however, cannot voluntarily consent to jurisdiction by compliance with the Texas registration statute unless it is actually "doing business" in Texas. By registering to do business, a foreign corporation only *potentially* subjects itself to jurisdiction. *See Leonard,* 829 F.Supp. at 886–89.[11]

---

**10.** *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (constitutionality of applying of forum state's statute of limitations to class action claim that was governed by substantive law of different states); *Bendix Autolite Corp. v. Midwesco, Enters., Inc.,* 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988) (constitutionality of state tolling statute); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (constitutionality of state residency requirement); *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (compliance with federal venue statute by designation of agent for service); *Washington ex rel. Bond & Goodwin & Tucker, Inc. v. Superior Court,* 289 U.S. 361, 53 S.Ct. 624, 77 L.Ed. 1256 (1933) (constitutionality of substitute

service statute that lacked provision for notice to defendant).

**11.** The *Leonard* court held that a foreign corporation that complies with the Texas registration statute consents to personal jurisdiction *only* if exercise of that jurisdiction is constitutional. *Id.* at 888–89 (citing *Wenche Siemer,* 966 F.2d at 183). The court explained the due process requirements of consent as follows:

Due process requires that a nonresident have enough contact with the state to generate a reasonable expectation that the state may constitutionally wield its judicial power over him. Service on a designated agent alone does not establish minimum contact. Rather, registration to do business and appointment of an

Accordingly, we hold that ContiCarriers' compliance with Texas registration statutes constitutes consent to personal jurisdiction *only* if the corporation's contacts in Texas were continuous, systematic, and of such a nature that the imposition of personal jurisdiction would not violate "traditional notions of fair play and substantial justice." *See Helicopteros,* 466 U.S. at 414–18, 104 S.Ct. at 1872–74; *Perkins,* 342 U.S. at 447–49, 72 S.Ct. at 419–20; *Wenche Siemer,* 966 F.2d at 183.

**B. Continuous and Systematic Contacts:** In conclusions of law two and five, the trial court determined:

2. [ContiCarriers] does not have the necessary systematic and continuous contacts with the State of Texas to warrant the exercise of general in personam jurisdiction over [ContiCarriers].

5. The cause of action asserted by Plaintiffs should be dismissed against [ContiCarriers] because the Court does not have jurisdiction of defendant [ContiCarriers'] person.[12]

▇▇ The Conners argue that undisputed evidence shows ContiCarriers maintained continuous and systematic contacts in Texas. They contend ContiCarriers: (1) has had a certificate of authority to do business in Texas since 1963; (2) has maintained an agent for service of process in Texas; (3) has filed franchise tax returns in Texas; (4) has sent barges to Texas ports since the early or mid

1980s; (5) has had contacts with Texas businesses; (6) earns yearly revenue from barges loaded or unloaded in Texas; (7) has hired Texas employees; and (8) has litigated in a Texas court. When considered in context of the entire record, we find these acts fail to establish the "continuous and systematic" contacts necessary to maintain general personal jurisdiction.

It is undisputed that ContiCarriers is authorized to do business in Texas. It has designated an agent for service, and it has filed franchise taxes. ContiCarriers operates approximately 500 barges that generate approximately 4000 to 4500 loads each year. During the year, only ten to twelve of these barges "end up" in Texas. However, Texas is *never* the original destination of ContiCarriers' barges, and barge loads only go to Texas upon *customer request.* ContiCarriers has never made a conscious effort to secure freight to go to Texas, and often refuses customer requests to take barges to Texas because it does not "do business" in the state and has nothing to back-haul. From 1991 to 1993, ContiCarriers gross revenue from barges unloading or loading in Texas was between $8,000 and $12,000 or less than one-fourth of one percent of ContiCarriers' total revenue.

▇▇ The Conners argue it was foreseeable that ContiCarriers would be "haled" into a Texas court because it allowed several barges go to Texas every year and it had

agent for service of process, especially when done to fulfill state law requirements, are only factors in the jurisdictional equation. Those acts do not constitute a general business presence or consent to suit in Texas courts on every matter. A foreign corporation must have contact, other than mere compliance with Texas domestication requirements, to be subject to personal jurisdiction in Texas.

\*　\*　\*　\*　\*　\*

When a foreign corporation does business in Texas, it benefits from and is protected by Texas laws; it enters into a "bargain" with the state. By doing business in Texas, a corporation avails itself of the protections of Texas, and in turn, consents to jurisdiction in Texas courts. Mere registration to do business or appointment of an agent for service of process is not availment, and without availment, there is no bargain—no social compact. If a corporation does not do business in Texas, it derives

no benefit from Texas laws. Without a received benefit there is no bargain, and without a bargain, there is no due process. A corporation cannot consent unless it is first afforded due process.

\*　\*　\*　\*　\*　\*

The idea that a foreign corporation consents to jurisdiction in Texas by completing a state-required form, without having contact with Texas, is entirely fictional. Due process is central to consent; it is not waived lightly. A waiver through consent must be willful, thoughtful, and fair. "Extorted actual consent" and "equally unwilling implied consent" are not the stuff of due process. *Id.* at 889.

12. We need not address the Conners' challenge to conclusion of law 6 because it merely states that "all conclusions of law may be considered as findings of fact where appropriate."

418

previously been sued for cargo damage in a Texas court. *See Guardian Royal,* 815 S.W.2d at 226. "Foreseeability" is implicit in determining whether there is a "substantial connection" between the nonresident defendant and the forum state. *Id.* at 227. That "substantial connection" must result from *actions or conduct* of the nonresident defendant *purposefully directed* toward the forum state. *Id.* The unilateral act of another party is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify the assertion of jurisdiction. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873. Allowing barges to go to Texas when requested by a customer and being sued once for cargo damage in a Texas court is not "purposeful availment" of the state's benefits and protection of its laws deemed necessary to create a "substantial connection" between ContiCarriers and Texas. The few barges that ended up in Texas represent only a minute percentage of ContiCarriers' business. Sporadic and minimal business within the state is insufficient to support general personal jurisdiction. *See International Turbine Serv. v. Lovitt,* 881 S.W.2d 805, 810 (Tex.App.—Fort Worth 1994, writ denied).

While ContiCarriers has had a few *sporadic* contacts with Texas, we do not deem them *significant.* ContiCarriers does not have any employees assigned to work in Texas. Out of approximately 150 to 160 current employees, only one lives in Texas. To maintain its certificate of authority, ContiCarriers regularly filed franchise tax returns, but reported no assets in the state. ContiCarriers does not advertise in Texas; have offices or headquarters in Texas; own or lease buildings or land in Texas; maintain any warehouses, demonstration rooms, or telephone listings in Texas; or keep bank accounts, company books, or records in Texas. The company has never accepted a note or credit terms with payments to be made in Texas. Further, the company does not have any officers or directors in Texas; have any vessel charter parties with representatives in Texas; have any salesmen, distributors or collection agents in Texas; conduct stockholders' meetings, directors' meetings or employee training programs in Texas. Finally, ContiCarriers has not purchased equipment, supplies, or raw materials in Texas, and it has never engaged in any construction work in Texas.

■■■ Arguing that ContiCarriers is the "alter ego" of its parent company, Continental Grain, the Conners contend that Continental Grain's Texas contacts should be imputed to ContiCarriers. ContiCarriers is the wholly-owned subsidiary of Continental Grain, which operates several grain elevators and maintains offices in Texas. Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state simply because its subsidiary is present or doing business there. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); *3–D Elec. Co., Inc. v. Barnett Constr. Co.,* 706 S.W.2d 135, 139 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent. *Hargrave,* 710 F.2d at 1159; *3–D Elec.,* 706 S.W.2d at 139.

In some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries. *Hargrave,* 710 F.2d at 1159; *3–D Elec.,* 706 S.W.2d at 139. The rationale for such an exercise of jurisdiction is that the parent corporation exerts such dominance and control over its subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Hargrave,* 710 F.2d at 1159. These principles apply not only in the situation where jurisdiction is sought over the parent corporation through its subsidiary's local activities, but also when jurisdiction is sought over the subsidiary through its parent corporation. *See Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978). Since the Conners assert jurisdiction on the basis that ContiCarriers is merely a "conduit" through which Continental Grain does business in Texas, the burden is on them to prove the existence of that agency relationship. *See id.*

■■■ To "fuse" the parent company and its subsidiary for jurisdictional purposes, the Conners must prove the parent controls

the internal business operations and affairs of the subsidiary. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. *See Hargrave,* 710 F.2d at 1160. Ownership of 100% of the stock and commonalty of officers and directors are not alone sufficient to establish an "alter ego" relationship between two corporations. *3–D Elec.,* 706 S.W.2d at 139. All relevant facts and circumstances surrounding operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist. *See Hargrave,* 710 F.2d at 1160. Factors to consider include: (1) whether distinct and adequately capitalized financial units are incorporated and maintained; (2) whether daily operations of the two corporations are separate; (3) whether formal barriers between the management of the two entities are erected, with each functioning in its own best interest; (4) whether those with whom the corporation come into contact are apprised of their separate identity; (5) whether the subsidiary files an income tax return separate from the consolidated return filed by the parent; (6) common stock ownership; (7) the method and degree of financing of the subsidiary by the parent; (8) common directors and officers; (9) separate books and accounts; (10) common business departments; (11) the extent to which contracts between the parent and subsidiary favor one over the other; and (12) the connection of the parent's employee, officer or director to the subsidiary's tort or contract giving rise to the suit. *Americas Ins. Co. v. Engicon, Inc.,* 894 F.Supp. 1068, 1073–74 (S.D.Tex.1995); *Dunn v. A/S Em. Z. Svitzer,* 885 F.Supp. 980, 988 (S.D.Tex.1995).

 If parent and subsidiary maintain separate and distinct corporate entities, the presence of one corporation in a forum state may not be attributed to the other. *See Hargrave,* 710 F.2d at 1160. Before alter ego jurisdiction may attach, the court must determine that the parent so controls or dominates the subsidiary as to disregard corporate formalities. *Id.*

 As parent and subsidiary, Continental Grain and ContiCarriers maintain significant ties. ContiCarriers received its initial capital from Continental Grain. The corporations share office headquarters in Chicago, Illinois. Their salaried employees have the same benefits and are paid by the same payroll system. Employees for Continental Grain provide legal, accounting and other services to ContiCarriers. ContiCarriers and Continental Grain's North American Grain Division ("NAGD") share a bank account and two of ContiCarriers' officers are also officers of NAGD. Further, approximately 50 percent of ContiCarriers' revenue comes from providing shipping services to Continental Grain.

Despite these connections, we find that Continental Grain did not disregard corporate formalities or exercise such control and dominance over ContiCarriers as to make alter ego jurisdiction proper. Both companies contribute the rent for the office space in Chicago. Although the sign to the office lists only Continental Grain and the receptionist answers the phone solely on behalf of Continental Grain, ContiCarriers is listed as a separate entity on the building directory and maintains a separate fax line. Continental Grain bills ContiCarriers for all of the legal, accounting or other services its employees provide to ContiCarriers. The crews on ContiCarriers' barges are employed solely by ContiCarriers and are paid entirely out of ContiCarriers' own payroll account. ContiCarriers and NAGD maintain their own books and the debits or credits to their shared account are charged separately to each company through an "intercompany" accounting system. Since the initial capital contribution from Continental Grain, ContiCarriers has conducted its operations without an equity infusion and both companies are adequately capitalized so that each are capable of paying a judgment. ContiCarriers separately owns or leases equipment and property. Similarly, Continental Grain enters into separate contracts, maintains separate bank accounts, and separately holds title to property. Both companies also file separate tax returns.

While Continental Grain is ContiCarriers' *largest* customer, it is *not its only customer;* and the price for shipping is the subject of

negotiations between parent and subsidiary. Continental Grain uses many of ContiCarriers' competitors for shipping services and, in fact, ships less than 10% of their total shipments with ContiCarriers. Finally, with the exception of one shared director/officer, ContiCarriers and Continental Grain maintain separate officers and directors. Similarly, with the exception of two common officers, ContiCarriers and NAGD maintain separate officers. ContiCarriers and Continental Grain *do not* hold joint stockholder or director meetings, and ContiCarriers' officers make all decisions on operating policy independently. Based on the evidence, we cannot say the corporate separation was "pure fiction." *See 3–D Elec.*, 706 S.W.2d at 140 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925)). We find the trial court correctly held that ContiCarriers was not the alter ego of Continental Grain.

**C. Fair Play and Substantial Justice:** Texas has no interest in adjudicating this claim other than the fact that *one* of the nine defendants sued is a Texas corporation. Suit was brought by nonresident plaintiffs against mostly nonresident defendants for personal injuries suffered out of state. While the Conners concede Texas is an inconvenient forum, they argue that mere inconvenience is not sufficient to overcome jurisdiction. This assertion is true only where there are minimum contacts. *See Guardian Royal*, 815 S.W.2d at 231; *see also Schlobohm*, 784 S.W.2d at 359. We have found that ContiCarriers' did not purposefully avail itself of the privileges and benefits of doing business in Texas by its fortuitous contacts with the state.

The Conners have failed to identify any compelling interest that would entitle them to relief in a Texas court. They have not established any issue that affects the interest of the interstate judicial system, nor argued any fundamental social policy that would be served by subjecting ContiCarriers to the jurisdiction of a Texas court. Accordingly, we find the trial court's refusal to subject ContiCarriers to the jurisdiction of a Texas court was in accord with traditional notions of fair play and substantial justice. We over-

rule points of error one through six and affirm the trial court's order.

EDELMAN, J., concurs in the result only.

LEE, Justice, dissenting.

Because we are bound by the previous decisions of this court, I respectfully dissent. In *Goldman v. Pre–Fab Transit Co.*, 520 S.W.2d 597, 598 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ), a Texas resident sued an Illinois corporation in Texas for damages arising out of an accident in Louisiana. This court held that the foreign corporation that was authorized to do business in Texas and maintained a registered agent for service in Texas consented to the jurisdiction of a Texas court. *Id.* Noting the theory of consent was implicit in article 8.10 of the Texas Business Corporation Act, this court explicitly rejected the defendant foreign corporation's argument that due process considerations precluded amenability to jurisdiction by consent. *Id.* According to the court, "the rationale behind the theory of consent is that in return for the privilege of doing business in the state and enjoying the same rights and privileges of a domestic corporation [under article 8.02 of the Business Corporation Act], the foreign corporation has consented to amenability to jurisdiction for purposes of all lawsuits within the state." *Id.*

The holding in *Goldman* was followed in *Acacia Pipeline Corp. v. Champlin Exploration, Inc.*, 769 S.W.2d 719, 720 (Tex.App.—Houston [1st Dist.] 1989, no writ). There, a Texas corporation sued a Delaware corporation in Texas for breach of a gas purchase contract made in Oklahoma. 769 S.W.2d at 720. Citing *Goldman* and noting that "consent as a basis of jurisdiction in an in personam suit has long been recognized," the court held that a foreign corporation authorized to do business in Texas and maintaining an agent for service in Texas, consented to in personam jurisdiction. *Id.*

I am aware of the contrary holding by the Fifth Circuit in *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181–83 (5th Cir.1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993). Relying on *Perkins v. Benguet Consolidated Mining*

*Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the court in *Wenche Siemer* held that a foreign corporation which properly complies with the Texas registration statute consents to jurisdiction only where such jurisdiction is "constitutionally permissible" and that the qualification to do business in Texas is of "no special weight in evaluating general personal jurisdiction." First of all, we are not bound by the pronouncements of the Fifth Circuit.[1] *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993); *see also Mohamed v. Exxon Corp.*, 796 S.W.2d 751, 753–54 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Second, the court's analysis in *Wenche Siemer* completely ignores *Goldman* and *Acacia*. This is evident by the court's statement that "no Texas state court decision has held that [section 8.10 of the Texas Business Corporation Act] acts as a consent to jurisdiction over a corporation in a case such as ours—that is, where plaintiffs are nonresidents and defendant is not conducting substantial activity within the state." 966 F.2d at 183.

Third, the court's reliance on *Perkins* is misplaced. In *Perkins*, the president of a foreign corporation that engaged in continuous and systematic activities in the forum state was served while present in the state. 342 U.S. at 438–40, 72 S.Ct. at 414–15. Because the cause of action did not arise in the forum state or relate to the corporation's business in the state, the Supreme Court examined the nature of the corporation's contacts in the state. *Id.* at 438–40, 72 S.Ct. at 415. Based on those contacts, the Court held that the due process clause did not prohibit the exercise of general in personam jurisdiction. *Id.* at 448–50, 72 S.Ct. at 420. In reaching that conclusion, the Court explained "the corporate activities of a foreign corporation which, under state statute, made it necessary for it to secure a license and designate a statutory agent upon whom process may be served provide a helpful but not conclusive test." *Id.* at 445, 72 S.Ct. at 418. The Court's explanation of why it chose to examine the corporation's contacts was necessary only because the foreign corporation did not

consent to jurisdiction by registering to do business in the forum state and designating an agent for service process there. *See id.* at 440 n. 2, 72 S.Ct. at 415 n. 2.

Similarly, in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 411, 104 S.Ct. 1868, 1870–71, 80 L.Ed.2d 404 (1984), the court examined the foreign corporation's contacts only because the foreign corporation was not authorized to do business and had not designated an agent for service in the forum state. Thus, I am not persuaded that *Goldman* is inconsistent with that precedent. As the plurality correctly observes, the U.S. Supreme Court recognizes that consent to jurisdiction is a viable doctrine. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *see also Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982).

Indeed, I would agree with the Conners that the Court had the opportunity to dispense with the doctrine of consent, but chose not to in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988). That case involved an Ohio statute that tolled limitations for any period a person or corporation was not "present" in the state. 486 U.S. at 888–89, 108 S.Ct. at 2219–20. Looking at Ohio's broad statutory scheme, the Court observed that "to be present in Ohio, a foreign corporation must appoint an agent for service, which operates as a consent to the general jurisdiction of the Ohio courts." *Id.* at 889, 108 S.Ct. at 2220. The Court held the Ohio tolling statute placed an unreasonable burden on interstate commerce because it forced the defendant, a foreign corporation, to chose between exposure to the general jurisdiction of Ohio courts (by appointing an agent for service and thus being present in the state) and forfeiture of the limitations defense (by not appointing an agent and thus remaining "absent" from the state), thereby remaining subject to suit in Ohio in perpetuity. *Id.* at 891, 108 S.Ct. at 2221. Thus, the

---

1. Nor are we bound to follow the pronouncements of our fellow appellate court in *Juarez v. United Parcel Service*, 933 S.W.2d 281, 284–85

(Tex.App.—Corpus Christi 1996, n.w.h.), which chose to rely on *Wenche Siemer*.

Court could not have held the statute constitutionally infirmed if it had not implicitly recognized that a foreign corporation can consent to the general jurisdiction of a forum state by registering an agent for service in that state. Therefore, while we are certainly bound by U.S. Supreme Court precedent, I disagree with the plurality's conclusion that *Goldman* conflicts with binding U.S. Supreme Court precedent.

According to the doctrine of *stare decisis,* after a principle, rule or proposition of law has been squarely decided by the Supreme Court or the highest court of the State having jurisdiction of the particular case, the decision is accepted as a binding precedent by the same court or other courts of lower rank when the very point is again presented in a subsequent suit between different parties. *Swilley v. McCain,* 374 S.W.2d 871, 875 (Tex.1964) I am not persuaded that this case poses one of those "rare occasions" when *stare decisis* should be ignored. *See Dawkins v. Meyer,* 825 S.W.2d 444, 454 (Tex. 1992) (J. Gonzalez dissenting) (noting that there are "rare occasions" when "[t]here are justifiable escapes and liberations from the rigidities and inflexibilities of *stare decisis* "). Rather, the facts and legal issues presented in this case are substantially the same as those resolved in *Goldman.* Therefore, I would hold that the doctrine of *stare decisis* requires us to adhere to the holding in *Goldman. See Lester v. First Am. Bank,* 866 S.W.2d 361, 363 (Tex.App.—Waco 1993, writ denied) (holding that "doctrine of *stare decisis* only applies if the facts on which the prior case is founded are substantially the same as those in the subsequent suit").[2] Accordingly, I would hold that ContiCarriers, by registering to do business in Texas and maintaining an agent for service in Texas, consented to the jurisdiction of a Texas court.

I would sustain the Conners' points of error, reverse the trial court's order, and remand for a trial on the merits.

### OPINION ON REHEARING

 In addition to the arguments raised prior to submission, the Conners contend in their motion for rehearing that the doctrine of *stare decisis* has been offended by our departure from *Goldman v. Pre–Fab Transit Co.,* 520 S.W.2d 597, 598 (Tex.Civ. App.—Houston [14th Dist.] 1975, no writ). For reasons of efficiency, fairness, and legitimacy, a court must adhere to its precedents. *Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex. 1995). *Stare decisis,* however, is not an inexorable command. *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Here, especially, where constitutional principles are at issue, we have a heightened duty to insure that our interpretations are correct. *Tex. Ass'n of Business v. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

 Further, as an intermediate appellate court bound by the decisions of higher tribunals, *stare decisis* is for us more than mere adherence to our own decisions. When a decision of this court is in conflict with higher authority, we are obliged by the doctrine of *stare decisis* to follow precedent established by the higher court. *See City of San Antonio v. Gonzales,* 737 S.W.2d 78, 80 (Tex.App.—San Antonio 1987, no writ); *Atchley v. Superior Oil Co.,* 482 S.W.2d 883, 897 (Tex.Civ.App.—Beaumont 1972, writ ref'd).

Finally, the Conners argue that a divided panel should not "overrule" a former decision of the court, particularly by means of an unpublished decision. By issuing an opinion "in unpublished secrecy," the Conners suggest that "partisan politics and personality, not precedent, guide this Court."

 A plurality opinion has little, if any, precedential value, and it constitutes no authority for the determination of future cases. *University of Texas Medical Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994). Because a plurality opinion cannot "overrule" a former decision of the court or establish a new rule of law, it is not ordinarily suitable for publication. To meet the concerns expressed by the Conners, and because the opinion involves an issue of con-

---

**2.** Even if we were not bound by *stare decisis,* I remain unconvinced that ContiCarriers' lacks the minimum contacts necessary to establish general

in personam jurisdiction as determined by the plurality.

tinuing public interest,[1] we order the plurality and dissenting opinions in this cause be published.

Appellees' motion for rehearing is overruled.

LEE, J., would grant rehearing.